## AYRES v. THE HARTFORD INSURANCE COMPANY.

1. Insurance: CHANGE OF INTEREST. A policy of insurance provided that "in case of any *sale, transfer, or change* of title in property insured by this company, or of any undivided interest therein, such insurance shall be void and cease." *Held,* that an assignment as collateral security was not a "sale, transfer, or change of title within the meaning of the policy;" following *S. C.* 17 Iowa, 176; WRIGHT J. dissenting.

2. New trial: INSTRUCTIONS: EVIDENCE. The verdict of the jury will not be disturbed by the Supreme Court when consistent with the instructions, and not clearly against the weight of evidence.

### *Appeal from Polk District Court.*

### WEDNESDAY, OCTOBER 3.

THIS case differs but little in its facts from those stated when it was before us on the former appeal, and which will be found in 17 Iowa, 176. Nor are the questions

HARVARD LAW SCHOOL LIBRARY

. madè materially different from those discussed in the last preceding case. The opinion notices these differences, and states all material facts necessary to a full understanding of the points made. Defendant appeals. ·

*Finch, Clark & Rice* for the appellant.

*Polk & Hubbell,* with *J. M. Dorr,* for the appellee.

WRIGHT, J.—Whether plaintiff had an insurable interest; the effect of the assignment of the title bond to Allen; the right to introduce parol evidence to explain the nature and object of said assignment; the sufficiency of the "proof of loss;" many, if not all, the questions arising upon the instructions—all hese inquiries are settled in the case immediately preceding, and by the opinion on the former appeal in this case. 17 Iowa, 176. A majority of the judges taking part in the decision held, that the assignment by plaintiff to Allen did not, under the circumstances, vitiate the policy. In this conclusion I did not concur; but as the two views were very fairly and somewhat fully stated by Justice DILLON, I did not deem it necessary to present at length the grounds of my dissent. As the question again arises in both cases, it is not improper that I should notice it very briefly. ·

1. INSURANCE: change of interest.

The policy provides : " And in case of any *sale, transfer or change of title* in property insured by this company, or of any individual interest therein, such insurance shall be void and cease. And the entry of a foreclosure of a mortgage, or the levy of an execution, shall be deemed an alienation." The application (if any was made, of which more hereafter) describes the property as " in the name of plaintiff, subject to a payment, &c." He, at the time, held the title bond by assignment from W. F. Ayers, and on the 21st day of January, 1861, assigned all his "right,

title and interest" therein to Allen. This was after the insurance, and without the knowledge or consent of the defendant. Now, is this provision of the policy violated if the object in this last assignment was merely to give to Allen collateral security for his debt against W. F. Ayers? In other words, is such an assignment a *sale, transfer or change* of title within the meaning of the policy?

The language employed is unambiguous. The meaning is clearly conveyed, and the same rule of construction should be applied as in other contracts. Plaintiff passed to Allen, parted with all his "rights, title and interest." To do this he employed apt language, and delivered the usual and ordinary evidence of such sale or transfer. Now, admit that under the proofs there was no "*sale*," a change of the actual ownership; was there not a clear "transfer or change of title?" To *sell* is one thing, and that a *transfer* or *change* is another is well indicated by the use of the three terms in this policy. Actual ownership of property, or the clear and undoubted right thereto, may be in one party and the *title* in another. A sale may imply a full and entire transfer, with all the rights of possession and title, while a *change* of title may imply less. So a sale may imply less than such transfer. And thus we see, aside from the legitimate deduction arising from the *use* of the words, that the contracting parties recognized a distinction, that there is a legal and technical difference, a difference, too, which I am not at liberty to disregard. And I ask, why should not these words be given their plain and obvious meaning? And why, if there has been a *change* or *transfer* of title, should this not vitiate the policy, though made as collateral or further security for a debt? The parties have a right to stand upon the terms of their contract. They fixed them deliberately, and knew what they were doing. The transfer was absolute and unconditional on its face, and after that

time the transferee had an undoubted right to demand a deed from Hall by complying with the terms of the bond. True, plaintiff's right to redeem, under the parol agreement, might have been enforced, but the *change* of title was just as complete as though there had been no such agreement. Then there is no qualification as to the nature or object of this transfer or change. If such a transfer shall be held to invalidate the policy in one case and not in another, depending upon the *fact* of transfer of title, or upon the inquiry whether it was nominal merely, and not with the intention to pass a full interest, then a wide door is opened, as it seems to me, for the perpetration of fraud. These parol understandings are ordinarily known only to the parties themselves. As to third persons, they can style the transfer as may suit their interest, a *sale* or a *trust*. And thus, the risk of the insurer becomes involved in secret complications. Whether the hazard is increased or not, yet, as it may be, the underwriters have purposely and by the use of apt words shut the door against *all* transfers or change of title.

The contract is personal; the integrity, honesty, care, caution, faithfulness and discretion of the *insured* being relied upon, and not the integrity and honesty of others. And we look to the *evidence* of the change to ascertain whether there has been a transfer *in fact* of *title*; for it is the change in *title* and not of *ownership* that the policy prohibits.

The two cases bearing most directly upon this question are cited in the former opinion. The Michigan case (10 Mich., 279,) I think clearly sustains the views above expressed; while the *New Hampshire* case (38 N. H., 232,) I really do not believe to be in conflict. And while many of the authorities cited by appellant do not, I concede, discuss the precise question here made, they sustain in their reasoning and the principles recognized, most

fully the Michigan court. I content myself with referring to them, as cited by counsel, without discussing them at length.

But a reference to the actual facts of this case, as now developed by the evidence, show, in my opinion, more than a mere *nominal* transfer. The insurance was for $3,000, of date December 10, 1860, and the fire occurred June 14, 1861. At the time of the insurance the property had been sold under the Allen judgment (which was recovered October 15, 1858, for $3,864.08) for $1,500. Other property was sold at the same time, amounting in the aggregate to $4,069, leaving due on the judgment about the sum of $500. The *fact* of sale by the sheriff was referred to in the application, and the loss was to be paid to such creditor. Plaintiffs could have redeemed the property by paying the $1,500, with interest. This was the extent of Allen's claim upon it. Now after this, by agreement of parties, the sale was mutually regarded as set aside, and the *whole* judgment was treated and recognized as a lien upon this as upon the other property.

But Allen, by this assignment, had the benefit, not only of this *general* lien, but he acquired a *specific* lien. And there could have been no redemption without paying the whole debt. Not only so, but Allen, by paying the Hall debt, or the consideration for the lot, could hold the property until reimbursed. And thus we see that plaintiff's property, instead of being liable, as at the time of the insurance, for at most $2,050, by the assignment became liable for a greater sum, *owing not by himself, but by another*.

Then why or upon what principle was this a mere nominal transfer? When the property was insured, Allen was bound to surrender it upon receiving the $1,500 with interest, or at most, by adding thereto the balance owing on his judgment, amounting in the aggregate to

Ayres v. The Hartford Insurance Company.

some $2,050. But by this assignment and the parol agreement he could hold it until paid his whole debt, with that going to Hall, if he advanced the same. Then, as the interest of the plaintiff in the property was, by such an arrangement, lessened, his interest and watchfulness in guarding and preserving it from fire, would proportionately decrease. And if so, there was, by the transfer, a violation of the policy. Or, let us suppose this rule is left out of view, and Allen's judgment is treated as a lien upon all the property (for it must be remembered that there was other real estate upon which the judgment was a lien); this, then, would make the policy inure to his benefit to the extent of his claim thus secured. He had no more interest in this property than any other. He had nothing to do with Hall except that his judgment was subject to his prior lien for the purchase-money. But suppose he had afterward bought the mill for $2,500, or any other sum, to be applied on his judgment, this would unquestionably have been a sale, or change of title within the meaning of the policy. He does buy it, so far as the *evidence of title is concerned*, and holds it, not for its due proportion of the debt, but may hold it for all. And thus plaintiff, as he had parted with his title and could not regain it, except upon terms more onerous than those existing at the time of the insurance, or without such transfer, had less motive to guard the property from loss, and as a consequence the policy was violated. So that in any view, upon the facts, it seems to me that there was a transfer or change of title; that the jury should have so found and upon this ground the judgment should be reversed.

A majority of the judges taking part in this decision reach a different conclusion, however, and to this extent the ruling below remains undisturbed.

One question remains, and this relates to alleged repre-

sentations made at the time of obtaining the policy. We say but one, for all the others are substantially covered by the rulings heretofore made in relation to this loss. And this one even, is not peculiar to this case, for the principles applicable have been twice enunciated. The question is, whether, under the facts and instructions, there were such misrepresentations as avoided the policy.

2. NEW TRIAL: instructions: evidence.

On the former hearing in this case, in referring to certain instructions of the court below, we drew the distinction between the powers of a local agent, having authority to receive and forward applications and risks of this kind, and one having the right to pass upon the risk without submitting it to the principal. This distinction was stated, and given to the jury in this case in the precise words of the former opinion. And now the claim is, that the agent had no authority to pass upon the risk, without first submitting it to the principal; that "the application" made and submitted, must be received as the true state of the title, of incumbrances and all matters of this nature, and that the principal would not, as a consequence, be bound by parol representations made by the applicant to the agent fully explanatory of the true condition of the property, but not written down by him. This proposition is based of course upon the assumption, that there was an application; that the jury found that the one copied into the record was forwarded, and that there was a material misrepresentation in such application. Whether this application was in fact the one upon which this policy was based, was left as a question of fact to the jury. Under the testimony it is, to say the least of it, doubtful.

Defendant avers and relies upon these misrepresentations. Its duty, therefore, was to satisfy the jury that it produced the standard before insisting that it spoke

more or less than the truth. In other words, it is left quite uncertain, whether the application offered is really the one forwarded, and upon which the policy was based. As the policy was issued, the premium paid, part of the loss adjusted, an appraiser appointed by the general agent to assist in estimating the loss, no objection made then or now that an application was never in fact forwarded, we of course cannot presume that the local agent failed in the discharge of his duty. And this question of fact, whether the policy was issued upon the application offered in evidence, having been submitted to the jury, we think they could consistently have found that it was not. Then, if it was not, we do not know what the one actually forwarded did contain, and hence cannot tell whether it did or did not embody the truth.

But in addition to this, as before indicated, the extent of the agent's powers, was submitted as a question of fact to the jury. Defendant claims that the evidence shows conclusively, that he had no right to take a risk of this kind without first submitting it to the company. And this claim is based upon certain language in the " Book of Instructions " to agents, to the effect, that in the insurance of flouring mills, the application is to be sent to the general agent for approval *in all cases*, before the policy is issued. Suppose this to be true, then the jury had nothing to do with the verbal explanations, and if they followed the instructions, as we are bound to presume they did, they left them out of consideration entirely. Plaintiff's theory was, that the agent had the power to determine and accept the risk, and based thereon, offered the parol proof. If the theory was well founded, the evidence was admissible. If not (and this was a question for the jury), then it should have been disregarded, as it probably was. At least we cannot conclude that the instructions on this subject were ignored. If to all this,

however, it is answered that the application is in conflict with the clearly established state of the title, then the answer is found in the fact before stated, that we do not know what application was made.

Without, therefore, determining by any means that there were misrepresentations, even upon the assumption that the application in the record is the one upon which the policy issued, we conclude that the judgment must stand

Affirmed.

COLE, J., having been of counsel, took no part in the determination of this case.