JOHN A. WEBBER, Guardian, Appellee, v. HARRISON COUNTY
FARMERS MUTUAL FIRE AND LIGHTNING INSUR-
ANCE ASSOCIATION, Appellant.

No. 44906.

DECEMBER 12, 1939.

Walter I. Wolfe, for appellee.

John A. Murray and H. H. Griffiths, for appellant.

HAMILTON, J.—At the time the policy involved in this suit was issued, Mrs. Elias Owens owned the property. She is now deceased. Prior to her death, she deeded the property to her daughter, Mrs. Brainard. At that time, the policy of insurance was in a safety deposit box in the bank and there was no special mention made concerning the policy of insurance and there was no attempt at making formal assignment of the policy to Mrs. Brainard. Mrs. Brainard had, for several years, been looking after her mother's affairs and knew about the policy of insurance and said she just assumed it would pass to her. Mrs. Brainard only had the property about a month when she entered into a contract of sale with the plaintiff, as guardian of Kenneth H. Webber, a minor, for the sale of said property to said ward and the deed was made shortly thereafter. At that time, Mrs. Brainard told plaintiff that there was a policy of insurance which her mother had taken out and she was willing to let him have it if it would do him any good. Plaintiff asked Mrs. Brainard to leave it at the office of the insurance company. She, accordingly, signed her name to the blank assignment on the back of the policy and took it to the office of Mr. Strong, the company's secretary, and left it in the office of Mr. Strong's clerk or stenographer, Mr. Strong being absent from the office, stating she was leaving the policy there for plaintiff. About 10 days, thereafter, plaintiff called at the insurance office and inquired about the policy. Strong was out of the office and plaintiff talked with the lady clerk. She told Webber that the policy was there, but she was unable to locate it for him. Shortly thereafter, he returned and again inquired about the policy and Strong was again out of the office and the conversation was with the same employee as on the previous occasion. Webber testified that she again looked for the insurance policy and was unable to find it, but that she said to him, in substance, everything has been fixed up and is all O.K. Following this and on September 25, 1937, Strong, the secretary of the company, mailed out assessment notices to the various policyholders and one of these was addressed to the plaintiff, John Webber, Logan, Iowa. It gave the number of the policy involved in this suit

and stated: "Your pro rata on policy No. 23,632 Total $5.00". These notices were prepared and dated September 23, 1937 and mailed on Saturday, the 25th day of September, 1937. The notice to Webber went to the wrong address and had to be returned, occasioning some delay in reaching plaintiff. The notice did not give any specific date on which the assessment must be paid. Webber testified that, in response to this notice, he went to the office and paid the $5.00 to the stenographer in the office of the secretary, the same lady with whom he had talked concerning the policy, and she stamped it "Paid, November 29, 1937". The property was totally destroyed by fire on November 28, 1937, the day before this five-dollar assessment was paid. Proof of loss was furnished but the company refused to pay. After the fire, Webber went to the office and Mr. Strong refused to turn over the policy to him and told plaintiff he did not have a policy and never had had one. Whereupon, this suit was started.

It was commenced and tried in equity. The petition is in two counts and the prayer is that the court decree that the defendant complete assignment and delivery of said policy to plaintiff and award judgment on said policy. After the evidence was in, an amendment was filed to conform to the proof wherein it is alleged that, as a part of the transaction, whereby plaintiff acquired title for his ward, the grantor in said deed signed the assignment clause of said policy and it was mutually agreed between the grantor and plaintiff that said policy would be delivered by grantor to the defendant insurance company for the purpose of completing the assignment thereof to plaintiff; that, in compliance with said mutual agreement, Mrs. Brainard did deliver said policy to defendant; that plaintiff, thereafter, called at defendant's office to complete said assignment; that, the first time he called, he was advised by Doris Suddick, employee of defendant, that the policy had been delivered there but she could not locate it; that a few days later, at defendant's office, the said employee informed him that she could not locate the policy, but that the assignment had been fixed up and it was all O.K. Said amendment also alleged the mailing of notice of assessment on said policy to the plaintiff, which was personally mailed by the secretary of the defendant company; the payment of

the assessment; the retention of the premium by the defendant and alleges that, because of said facts above set out, defendant has waived any technical or legal requirement as to the manner and mode of assignment of said policy they may have required; that, by said conduct of defendant and as shown by the evidence, plaintiff was led to believe and rely that said policy was in full force and effect and defendant is now estopped to deny that said policy was in full force and effect at the time of said loss. The answer admits that the house on said property was insured under its policy, No. 23,632; that plaintiff called at its office and was told by the person in charge of the office that the policy was in its office but could not then be located; that defendant neglects and refuses to complete the assignment and delivery of said policy to plaintiff; that the property was completely destroyed by fire; but denies all other allegations. It will be noticed that there is no affirmative defense specially pleaded. Code section 11209 provides:

"Any defense showing that a contract, written or oral, or any instrument sued on, is void or voidable; or that the instrument was delivered to a person as an escrow, or showing matter of justification, excuse, discharge, or release, and any defense which admits the facts of the adverse pleading, but by some other matter seeks to avoid their legal effect, must be specially pleaded."

The importance of the foregoing statutory provision will appear as we proceed with the discussion of the issues raised on this appeal.

The trial court held that the defendant, by its conduct relative to said policy, waived all requirements as to the formal assignment of said policy and is now estopped to insist that said policy was not properly assigned, and rendered judgment against the defendant company for the amount of the policy, interest and costs.

After carefully considering the evidence, we are satisfied that the conclusion reached by the trial court has ample support.

The appellant's contention that the policy was void; that it ceased to exist and came to an end when Mrs. Owens

transferred the property to her daughter; and that, at the time Mrs. Brainard attempted to assign the policy to plaintiff, it did not, in fact, exist cannot be considered for the reason that it was not an issue under the pleadings. The defendant admits in its answer that the property was insured under the policy involved. It did not seek to avoid liability by pleading any special defense which might have been available to it.

The policy was in existence. It was assigned to plaintiff by Mrs. Brainard and, as agent for the plaintiff, she took the policy to the insurance company's office for the purpose of having the assignment completed. The company officials accepted the policy, but did not complete the assignment, neither did they make any attempt to cancel the same. They did, however, recognize the transfer of the property to plaintiff and his ownership in the policy in that they mailed him notice of assessment thereon. The conduct of the employees of this company certainly was such as to mislead the plaintiff into believing that the policy was in force. Strong, the secretary of the company, attempts to excuse or explain the assessment notice by saying that it was his thought and intention ''to call the fact to Mr. Webber that if he wanted the policy to give him a chance to come in and take insurance, and that it would bring him into the office.'' This is too fantastic. Mr. Webber had been in the office twice. It is very improbable that the clerk or stenographer failed to call Mr. Strong's attention to this fact. He undoubtedly knew that Webber had purchased this property; that the policy had been brought to the office. As an insurance man, he must have had a very good idea why it had been brought to the office. He says he saw this policy in April, 1937, which date corresponds with the date Mrs. Brainard left the policy in his office; that, after Mrs. Brainard left this policy at his office, it was not kept in the regular office files, but in his own files, and claims that this was done so that plaintiff would not get an assignment of it through his clerk. If he was fearful that plaintiff would get an assignment of it, he undoubtedly knew that plaintiff owned the property insured. Why else would plaintiff be seeking an assignment of the policy? He said that he knew that this policy was originally made to Mrs. Elias Owens; that he knew she was dead; knew there had never been an assignment of it and claims that he was not

willing to have this amount of insurance on this property. In the light of the foregoing statements from the lips of the company's secretary, how can it be said that the company was not possessed with knowledge of the facts? Appellant calls attention to the fact that Strong was on the witness stand and appellee had an opportunity to cross-examine him and never asked him any questions concerning his knowledge. The answer to this is that he was the company's witness and counsel for the company did not go into this matter and the fact that they did not ask him anything about it would indicate that this was not a matter presented to the court at all. Why should the appellee be required to do more to establish the fact that the company knew who the owner of this property was and who claimed to be the holder of the policy of insurance than to establish, by documentary proof, that the company made out the assessment on this policy and mailed it to the plaintiff telling him his pro rata share was $5.00 and that he went to the office and paid it, the young lady stenographer, who had told plaintiff everything was all O. K. and that the assignment had been fixed, or words to that effect, receiving the money and stamping the assessment notice paid? She was in charge of this part of the company's affairs. When Strong found out about it, he did not return the premium. Some time later, when the plaintiff insisted upon taking the matter up with the board of directors, he was tendered the $5.00 and the defendant again tendered it in open court, but the conduct of the company's agents up to the date of the fire, points almost conclusively to the fact that they were fully cognizant of the fact that this property had been conveyed to plaintiff and recognized and considered this policy as valid, and that plaintiff had been told everything was all right, and, if so, they should be held to have waived formal assignment and should be estopped to gainsay what all their actions and conduct indicate to be true.

█ The company could waive the formality of a written assignment or any assignment for that matter. Forfeiture clauses and conditions against transfer of title, encumbrances, etc., are for the protection of the company against increase of hazard without their knowledge and consent and may be waived.

█ While the young lady testifies quite positively that she is sure she never said that the assignment had been taken care

of and everything was O. K., we have one witness' word against the other so we must look to the conduct of the parties and the surrounding circumstances to determine the preponderance. Something must have happened to satisfy the plaintiff that everything was all right for he quit coming to make inquiry. He, undoubtedly, was anxious that the policy be in force and understood that consent to the assignment was necessary because he made two trips to the office to make sure the matter had been attended to, therefore, his conduct is consistent with his testimony as to what the young lady told him. What about the conduct of the company's employees? Is it consistent with their present contention that no assignment had been made and that the policy was not in force? The same young lady made out the assessment notices. She figured up the pro rata share the plaintiff would have to pay on this very policy. She did not hesitate to take the money and stamp the company's "paid" stamp on the notice. Mr. Strong, the secretary, admits that he carried the letters to the post office and personally mailed out this letter to the plaintiff.

We have not discussed all the propositions raised by the appellant, but what we have said is determinative of the case. The conclusion the trial court reached, and which we affirm, has ample support in the following cases: Neiman v. City of New York Ins. Co., 202 Iowa 1172, 211 N. W. 710; State Central Sav. Bank v. St. Paul F. & M. Ins. Co., 184 Iowa 290, 168 N. W. 201; Boyce v. Farmers' Mutual Ins. Assn., 209 Iowa 11, 227 N. W. 523; Viele v. Germania Ins. Co., 26 Iowa 9, 55, 96 Am. Dec. 83; Fahey v. Ancient Order U. W., 187 Iowa 825, 831, 174 N. W. 650; Conway Bros. v. Iowa Hardware Mut. Ins. Assn., 190 Iowa 1369, 181 N. W. 768; Van Scoy v. National Fire Ins. Co., 191 Iowa 1318, 184 N. W. 306.

The decree of the trial court should be and is, accordingly, affirmed.—Affirmed.

OLIVER, C. J., and MILLER, SAGER, HALE, BLISS, MITCHELL, and RICHARDS, JJ., concur.