**UNITED STATES of America,**
**Plaintiff,**

v.

**FARMERS MUTUAL INSURANCE AS-**
**SOCIATION OF KIRON, IOWA,**
**Defendant.**

**Civ. No. 1166.**

United States District Court
N. D. Iowa, W. D.

June 17, 1960.

F. E. Van Alstine, U. S. Atty., by William R. Crary, Asst. U. S. Atty., Sioux City, Iowa, for the Government.

S. F. Wadden, Harry H. Miller, Frank Jacobs and Dewie J. Gaul, Sioux City, Iowa, and Sterling Alexander, Des Moines, Iowa, for defendant.

BECK, District Judge.

The defendant's motion to dismiss in this case, is predicated on the theory that the insured's giving of a chattel mortgage on the insured property, without the insurer's consent, constituted a violation of the policy terms which specified: "If any change * * * take place in the interest, title, possession or use of the subject matter of insurance", and that such a breach bars recovery under the insurance contract.

The facts are not in dispute and there is no genuine issue as to any material facts having bearing on the question arising on the motion which has not been settled under the pleadings, the written briefs or on the oral argument.

North, the insured, got the fire insurance policy in question from the defendant on June 24, 1958 and he gave the chattel mortgage, which also is in question, later, to secure payment of money he then borrowed from the Commodity Credit Corporation. That policy to the extent of $1,750, covered corn, which became encumbered as he gave that mortgage and to the extent of $1,250, other portions of his corn not subject to any mortgage. The defendant paid the $1,250 to the insured after a fire on February 7, 1956, had destroyed 6,184 bushels of his corn, but refused the loan agency's demand for the $1,750.

The Government's demand for judgment herein, is grounded on that refusal and on the insurance rights North had after he had been paid and when he assigned those rights to the Commodity Credit Corporation.

Under this record it is admitted that the total fire loss exceeded the insurance coverage of $3,000, that the defendant, Farmers Mutual Insurance Association of Kiron, Iowa, is a corporation doing business within the jurisdiction of this court and that this is an action brought by the United States of America based on a claim of Commodity Credit Corporation, its agency and instrumentality, over which jurisdiction is conferred on the court by § 4(c) of the Commodity Credit Corporation Charter Act (62 Stat. 1070), as amended, (63 Stat. 154 and 64 Stat. 261), 15 U.S.C.A. § 714b(c).

The Government in its resistance to the defendant's motion contends: (1) That the by-law provisions in the policy, voiding it, "If any change * * * takes place in the interest, title, possession or use of the subject matter of insurance", are not among those permitted or prescribed by the Code of Iowa and therefor against its public policies and void; (2) that Iowa case law compels rejection of the defendant's viewpoint, on this motion, that a chattel mortgage on the subject matter of the insurance, without the insurer's consent, constitutes a breach of the insurance contract which bars recovery and (3) that the defendant's payment of the fire loss to the extent of $1,250, operated as a waiver of any defense it may have had under that provision of the insurance contract.

The provisions in the new Iowa Code aside from specific negatives as to (1) contain compelling affirmatives also of a legislative intent not to exclude, as void, from a mutual insurance association policy, provisions or terms, other

than those against public policy of the state or in conflict with those which have been prescribed for the Form Standard Fire Insurance Policy. Such intent is clearly reflected in the following excerpts from Chapters 515, 518, Code of Iowa for 1958, I.C.A. Chapter 515 of the present Iowa Code is entitled "insurance other than life" and governs both mutual and stock companies' policies, including the provisions and conditions of their policies.

Section 518.1: "1. Any number of persons may by incorporating under chapter 491 (corporations for pecuniary profit) enter into contracts with each other for the following kinds of insurance from loss or damage by:

"a. any peril or perils resulting in physical loss of or damage to property.

"b.　＊　＊　＊

"c.　＊　＊　＊

"d.　＊　＊　＊

"2. For the purpose of this protection these contracts of insurance shall be subject only to such provisions as are contained in this chapter and shall consist of:

"a. An application on blanks furnished by the association and signed by the insured or his representative, which may contain in addition to other provisions; ＊ ＊ ＊, an agreement to be governed by the articles of incorporation and by laws in force at the time the policy is issued ＊ ＊ ＊ "

Section 518.2: "Any association incorporated under the laws of this state for the purpose of furnishing insurance as provided for in this chapter, doing business only within the county in which is situated the town or city named in its articles of incorporation as its principal place of business, or the counties contiguous thereto, shall, for the purpose of this chapter, be deemed a county mutual assessment association; ＊ ＊ ＊ the words 'mutual' and 'association'

shall be incorporated in and become a part of their name."

Section 518.5: "When such articles of incorporation and by laws are printed on the policy they become a part thereof and are binding upon the association and the insured alike."

Section 515.87: "If, upon such examination, it shall appear to the commissioner of insurance that the assets of any company organized or operating upon the plan of mutual insurance under this chapter are insufficient to justify the continuance of such company in business, he shall proceed in relation to such company in the same manner as herein required in regard to stock companies; ＊ ＊ ＊ "

Section 515.138: "Second Standard policy, additions, riders and clauses. It shall be unlawful for any insurance company to issue any policy of fire insurance upon any property in this state ＊ ＊ ＊ other or different from the standard form of fire insurance policy herein set forth.

"There shall be printed at the head of said policy the name of the insurer or insurers issuing the policy; ＊ ＊ ＊; a statement whether said insurer or insurers are stock or mutual corporations or are reciprocal insurers; ＊ ＊ ＊."

Section 515.21: "Such mutual company may insert in any form of policy prescribed by the law of this State any additional provisions or conditions required by its plan of insurance if not inconsistent or in conflict with any law of this state."

Section 515.138: "Sixth. The form of the standard policy ＊ ＊ ＊ policy ＊ ＊ ＊ shall be as follows:

＊　＊　＊　＊　＊　＊

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring.

"a. While the hazard is increased by any means within the control or knowledge of the insured; or

\* \* \* \* \* \*

"Added provisions. The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy may be provided for in writing added hereto."

Those provisions, rather than being indicative of a legislative policy, as the Government contends, to restrict permissible terms in an insurance policy to those prescribed by the standard form and forfeiture conditions to those within the statutory "increased hazard" category, are expressive of insurance standards which permit apt write-ins—not inconsistent with specific statutory mandates or public policies—broad enough to cover the insurance arrangement that the contracting parties intend.

The rule which obtains under facts such as those which are before the court on this motion provides:

"Conditions of a fire insurance policy forbidding any alienation of the property insured, or any change in the title, interest, or possession thereof, are valid and enforceable, and a violation thereof renders the policy void, or is ground for avoiding it, as against the insured or parties claiming through him." 45 C.J. S. Insurance § 562, page 318.

Earlier cases, holding otherwise [1] and those in conflict [2] therewith and the his-

1. Annotation, 126 A.L.R., at page 481: "The general rule is that the mere giving of a mortgage, or of a deed or other conveyance intended to operate as such, does not effect a change of title or interest in the insured property within the meaning of conditions in insurance policies avoiding the policies in case of change of title or interest in the subject of insurance. (Unless otherwise indicated, the cases involve mortgages of real property.)"

2. Annotation 126 A.L.R., at page 486, where under caption "contrary rule" the following statements among others are made: "Some courts apparently have adopted the view that the giving of a mortgage upon the property insured, or a deed or other conveyance defeasible upon the payment of a sum of money to secure which the deed was given, is a breach of a condition of the policy that it shall be void if there is a change in the title or interest of the insured in the property covered thereby. (It should be noted that some of these decisions depend upon special circumstances, or upon the existence of particular statutory provisions.)

"The decisions in some of the cases at variance with the general rule turn upon a special significance given to the term 'interest' as distinguished from the word 'title.' Thus, the term 'interest' used in connection with a forfeiture condition contained in an insurance policy providing that the policy should be void 'if any change \* \* \* takes place in the interest, \* \* \* title, or possession of the subject of insurance,' was held in Ornatowski v. National Liberty Ins. Co., 1939, 290 Mich. 241, 287 N.W. 449, to have a different import then the word 'title' used in the same connection, and to embrace both legal and equitable rights, and to cover rights in property less than title thereto. It was accordingly held that the provision against change of title forbade the giving of a deed and bill of sale of insured property, though the same were given merely as security for a debt.

"And a forfeiture of a policy of insurance containing a provision against the sale or conveyance, or change in the interest of the parties, was declared in Torrop v. Imperial F. Ins. Co. (1896) 26 Can.S.C. 585, where the insured gave a bill of sale not amounting to an absolute transfer, of the chattels covered by the insurance policy, the court holding that there was a 'change of interest' which avoided the policy.

"Also, where an insurance policy provided that it should be void if any change took place in the title, location, interest, or possession of the property insured, thereby, it was held that the condition was broken by the insured's giving a mortgage upon the property covered by the policy after its issuance, the court saying that it was quite clear that within the meaning of the terms used in the policy, a mortgage conveyed an interest in the property mortgaged to the mortgagee. East Texas F. Ins. Co. v. Clarke, 1890, 79 Tex. 23, 15 S.W. 166, 11 L.R.A.

tory of the rule which now prevails, are discussed in the text statement by the author at page 318, as follows:

"Under the earlier fire policies, a stipulation therein that the policy should become void on 'alienation' of the property insured, or on 'transfer' or 'sale' thereof was held to refer only to an absolute transfer of insured's entire interest, unless the words 'in whole or in part' were added, in which case the retention of a partial interest did not keep the policy alive as to such interest. In later policies the term 'change of title' has been added to the former words, and under the clause now usually found in fire insurance policies the policy may be avoided, or is void, for any change in the title, interest, or possession of the property insured, even though a partial interest is retained, unless, as discussed infra § 563, insurer consents to the change. According to some authorities, a breach of the condition against alienation or change of title or interest has the effect of rendering the policy void ipso facto; but according to other authorities it merely gives insurer the right to forfeit the policy.

"These conditions against alienation or change of title or interest, whether appearing in the policy itself or in the by-laws of a mutual company, have uniformly been upheld as reasonable and valid. They are to be construed with reference to the relations of the parties and the situation of the property insured, having regard to the ordinary meaning of the language used as applied to the purpose intended, and the rule of strict construction to avoid a forfeiture being applied whenever it can be done without doing violence to the plain contract stipulations. They refer to a change in the character and quality of the title held by insured, but only to alienation or change subsequent to the time the insurance was effected, and, according to the decisions on the question, prior to the loss * * *.

"The word 'interest,' as used in such a condition, means a proprietary or insurable interest, and the condition is not violated so long as insured continues to be the sole owner and possessor of the property; but a transfer of any interest, legal or equitable, will avoid a policy containing a condition against change of interest."

Collins v. Merchants' and Bankers' Mutual Ins. Co., 1895, 95 Iowa 540, 64 N.W. 602, 58 Am.St.Rep. 438, cited and relied on by the Government, turned on the point that the "incumbrance" provision in the policy in that case, had reference to an incumbrance which existed when the insurance contract was made, and Taylor v. Merchants' and Bankers' Ins. Co., 1891, 83 Iowa 402, 49 N.W. 994, also cited and relied on, is not in point which the Government admits.

293 (distinguishing this case, see Lampasas Hotel & Park Co. v. Phoenix Ins. Co., Tex.Civ.App., 1896, 38 S.W. 361, supra, III b). And see Sossaman v. Pamlico Bkg. & Ins. Co., 1878, 78 N.C. 145, and Watson v. North Carolina Home Ins. Co., 1912, 159 N.C. 638, 75 S.E. 1105, infra.

"And in Ayres v. Hartford Ins. Co., 1866, 21 Iowa 193, where a transfer or change of title is distinguished from a sale, the court held that the assignment of a title bond as collateral security for an indebtedness violated a provision voiding a policy of insurance if the insured sold, transferred, or changed the title in the property insured, saying: 'To sell is one thing, and that a transfer or change is another is well indicated by the use of the three terms in this policy. Actual ownership of property, or the clear and undoubted right thereto, may be in one party and the title in another. A sale may imply a full and entire transfer, with all the rights of possession and title, while a change of title may imply less. So, a sale may imply less than such transfer. And thus we see, aside from the legitimate deduction arising from the use of the words, that the contracting parties recognize a distinction that there is a legal and technical difference, a difference, too, which I am not at liberty to disregard.' "

Ellis v. State Ins. Co., 1883, 61 Iowa 577, 16 N.W. 744, and Lee v. Agricultural Ins. Co., 1890, 79 Iowa 379, 44 N.W. 683, on the other hand, clearly are in point and on principle in complete accord with the rule invoked, in that they show the Iowa Court, as early as 1883, having regarded a chattel mortgage on insured property, as being within "increased hazards" and the condition in an insurance contract against such risks, as valid.

In Ellis it is held:

"A policy of fire insurance containing a provision that 'if the title of the property is transferred, incumbered, or changed, the policy shall be void,' is rendered void by the execution of a mortgage on the insured property."

and in the opinion we find:

"The policy contained the following provision: 'If the title of the property is transferred, incumbered, or changed, this policy shall be void.' The defendant sought to prove that the assured, on the sixth day of December, 1881, had executed a mortgage on the insured property, and that the same was an existing incumbrance thereon at the time the property was destroyed by fire. The evidence was rejected by the court, as we think, erroneously. Counsel for appellee maintain that the provision of the mortgage, that 'if the title of the property is transferred or changed,' refers alone to the title, as contradistinguished from the property insured, and that an incumbrance by mortgage does not render the policy void. But we think the only fair and reasonable construction of the condition of the policy is that if the property is incumbered the policy is void. The intention was to render the policy void if the interest of the assured was rendered less than it was when the policy was issued; for thereby the risk would undoubtedly be increased, because of the temptation on the part of the assured to improve his condition by voluntarily setting out the fire, or failing to exert himself to prevent a total destruction of the property when the fire was accidental. It is impossible, it seems to us, to incumber property without affecting or rendering less valuable the title thereto. The title to the property in question was incumbered. A mortgage, it seems to us, necessarily has such an effect * * *."

Lee adopts the same rule as it holds:

"The execution of a mortgage on the insured property is of itself an increase of the risk, and a decrease of the security of the insurer, since it lessens the interest of the assured in the property, even though no right of action has accrued upon such mortgage, which is given to secure a surety on a debt not yet due.",

and as the court makes the statement in its opinion that:

"The giving of a chattel mortgage is, beyond question, an increase of the risk, and a decrease of the defendant's security, because thereby the assured lessened his interest in the insured property. It makes no difference that a right of action had not accrued upon the mortgage. It was a depletion of the assured's interest in the property, to the extent thereof, from its execution and delivery."

North, under these authorities, and as he gave the chattel mortgage on the subject matter of the insurance without the defendant's consent, brought his insurance contract not only within the general prevailing rule that such an act violates a condition in a policy against "any change in interest * * *", but also under the statutory prohibition against "increased hazards".

The defendant's payment of the $1,250 loss, on the corn not mortgaged, did not operate as a waiver of the defense it had under the "any change of interest * * *" condition in the policy, against demands for loss payment on corn which had been mortgaged. The cases cited, Webber v. Harrison County

714

Mut. Fire & Lightning Ins. Ass'n, 1939, 227 Iowa 793, 288 N.W. 868 and Neiman v. City of New York Ins. Co., 1927, 202 Iowa 1172, 211 N.W. 710, as being in support of a waiver having been effected, are not in point and the general rule is as stated in 17 C.J.S. Contracts § 405, page 894:

"As in the case of other stipulations in a contract for his benefit, a party entitled to terminate a contract under its own terms may waive the right so to do, even though notice of intention to terminate has been given. *However, a provision in a contract for cancellation may be resorted to after a continuing breach, although at first the party entitled to cancel chooses to regard the contract as subsisting * * *.*" (Emphasis supplied.)

The defendant's motion to dismiss, in view of the record and the foregoing authorities, must be and such motion is hereby granted.