UNITED STATES of America, Appellant,

v.

FARMERS MUTUAL INSURANCE ASSOCIATION OF KIRON, IOWA, Appellee.

No. 16594.

United States Court of Appeals Eighth Circuit.

April 3, 1961.

William R. Crary, Asst. U. S. Atty., Sioux City, Iowa, for appellant. F. E. Van Alstine, U. S. Atty., Sioux City, Iowa, on the brief.

Harry H. Miller, Sioux City, Iowa, and Sterling Alexander, Des Moines, Iowa, for appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The issue presented by this appeal is whether the trial court committed error in sustaining defendant's motion to dis-

miss the Government's complaint and in treating such motion as a motion for summary judgment and in entering final judgment dismissing the complaint.

This action is brought by the United States of America based upon a claim of the Commodity Credit Corporation (CCC), its agency and instrumentality. Jurisdiction is based on § 4(c) of the CCC Charter Act (62 Stat. 1070), as amended (63 Stat. 154 and 64 Stat. 291) 15 U.S. C.A. § 714b(c).

The defendant is a mutual insurance association incorporated and operating under Chapter 518 I.C.A.

The Government in its complaint alleges that the defendant on December 23, 1957, issued to Tracy North its insurance policy effective for a period of five years commencing January 24, 1958, providing fire and other insurance coverage upon Mr. North's buildings and personal property in a total amount of $31,925 including insurance upon corn in crib in the amount of $3,000. That on November 20, 1958, CCC made corn loans totalling $7,062 secured by chattel mortgages on 7,062 bushels of Mr. North's corn stored on his farm; that CCC is the holder and owner of the notes evidencing such loans; that on February 7, 1959, while North's policy of insurance was still in full force and effect a fire totally destroyed 6184 bushels of the corn mortgaged to CCC as well as other corn covered by the insurance but not included in the mortgage; that all conditions precedent of said policy and all terms thereof to be performed by North have been performed or have occurred.

The complaint further alleges that defendant paid North $1,250 for fire loss on unmortgaged corn but that the remaining insurance coverage of $1,750 on said corn has not been paid. That on January 18, 1960, North assigned in writing to CCC all rights of action to him accrued under the insurance policy issued by the defendant with respect to the loss by fire of corn owned by him and mortgaged to CCC.

A complete copy of the policy and endorsements, including defendant's articles of incorporation and bylaws is attached to and made a part of the complaint.

Defendant filed a motion to dismiss the complaint, which reads:

"The Defendant in the above-entitled action moves the Court as follows:

1. To dismiss the action because the complaint fails to state a claim against defendant upon which relief can be granted."

The record before us consists of the complaint, the motion to dismiss, memorandum decision of the trial court, final judgment of dismissal and notice of appeal. The trial court in its memorandum opinion, 184 F.Supp. 708, states that the motion to dismiss "is predicated on the theory that the insured's giving of a chattel mortgage on the insured property, without the insurer's consent, constituted a violation of the policy terms which specified: 'if any change * * * take place in the interest, title, possession or use of the subject matter of insurance', and that such a breach bars recovery under the insurance contract."

The court states the Government's contentions, which are substantially the same as the contentions raised on this appeal, as follows:

"The Government in its resistance to the defendant's motion contends: (1) That the by-law provisions in the policy, voiding it, 'If any change * * * takes place in the interest, title, possession or use of the subject matter of insurance', are not among those permitted or prescribed by the Code of Iowa and therefor against its public policies and void; (2) that Iowa case law compels rejection of the defendant's viewpoint, on this motion, that a chattel mortgage on the subject matter of the insurance, without the insurer's consent, constitutes a breach of the insurance contract which bars recovery and (3) that the defendant's payment of the fire loss to the extent of $1,250, operated as a waiver of any defense

it may have had under that provision of the insurance contract."

Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides for motions to dismiss and authorizes dismissals for "(6) failure to state a claim upon which relief can be granted." Said rule further provides:

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

The trial court in its opinion filed June 17, 1960, directed that the motion to dismiss be sustained. Thereafter on June 28, 1960, final order of dismissal was filed which states in part:

"The court on the hearing of the motion to dismiss in this action having had matters presented which were outside of the pleadings and those matters not having been excluded, and the parties having treated said motion as one for summary judgment and the court having regarded and treated the motion as such as it heretofore rendered its Memorandum Decision in favor of the defendant and against the plaintiff, and it appearing from said decision that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment for dismissal of the plaintiff's complaint as a matter of law, * *."

The Government contends that it had no notice or information that the court was treating the motion to dismiss as one for summary judgment and that it was thus deprived of the opportunity to present material pertinent to such motion as authorized by Rule 56. The record lends some support to such contention, but since we are of the view that the judgment must be reversed whether the motion is one to dismiss or one for summary judgment, we deem it unnecessary to pass upon this contention.

A motion to dismiss a complaint should not be granted unless "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Thomason v. Hospital T. V. Rentals, Inc., 8 Cir., 272 F.2d 263, 264; Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80; Lada v. Wilkie, 8 Cir., 250 F.2d 211.

■ In a summary judgment situation, the court may consider admissions and facts conclusively established but all reasonable doubts touching the existence of a genuine issue as to material fact must be resolved against the movant.

The rule to be applied is thus stated in Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213, 216:

"A summary judgment upon motion therefor by a defendant in an action should never be entered except where the defendant is entitled to its allowance beyond all doubt. To warrant its entry the facts conceded by the plaintiff, or demonstrated beyond reasonable question to exist, should show the right of the defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances. * * * A summary judgment is an extreme remedy, and, under the rule, should be awarded only when the truth is quite clear. * * * And all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment."

To like effect see Warner v. First National Bank of Minneapolis, 8 Cir., 236 F.2d 853, 857; Caylor v. Virden, 8 Cir., 217 F.2d 739, 741–742.

■ Thus if under the pleadings or the pleadings as supplemented by any

record made before the trial court, the defendant has demonstrated that no material disputed issue of fact is presented and that the Government would not be entitled to recover under any discernible circumstances, the judgment of dismissal would be entitled to be affirmed.

We shall first consider defendant's contention that the policy authorizes the forfeiture in event that the insured property is mortgaged without the insurer's consent.

Defendant's bylaws, made part of the policy, contained the following provisions:

"Section 18—Change of Title and Removal of Property.

"Unless otherwise provided by written agreement of this Association, this policy shall be void: If any change other than by death of the insured, whether by legal proceedings, judgment, voluntary act of the insured or otherwise take place in the interest, title possession or use of the subject of insurance.

\*   \*   \*   \*   \*   \*

"Section 20—Incumbrance.

"Incumbered property may be insured and a mortgage or loss payable clause issued and attached when the policy is written, or afterwards if the policy is returned to the Secretary for that purpose."

The trial court upheld the defendant's contention that the giving of the mortgage to CCC after the issuance of the policy violated the condition contained in Section 18, rendering the policy void upon any "change in interest" of the insured. The Government urges that the court erred in such determination. The issue presented is whether it may conclusively be said as a matter of law that the giving of a chattel mortgage upon the part of the insured property without first obtaining insurer's consent thereto is a violation of the condition of the policy relating to a change of interest. This problem is thoroughly considered in an annotation in 126 A.L.R. 473, 481, where it is stated:

"The general rule is that the mere giving of a mortgage, or of a deed or other conveyance intended to operate as such does not effect a change of title or interest in the insured property within the meaning of conditions in insurance policies avoiding the policies in case of change of title or interest in the subject of insurance."

To like effect see 29 Am.Jur., Insurance, § 648–49.

In 45 C.J.S. Insurance § 562, at page 320,—

"The word 'interest,' as used in such a condition, means a proprietary or insurable interest, and the condition is not violated so long as insured continues to be the sole owner and possessor of the property; but a transfer of any interest, legal or equitable, will avoid a policy containing a condition against change of interest."

Taylor v. Merchants' & Bankers' Ins. Co., 83 Iowa 402, 49 N.W. 994, is cited in the A.L.R. annotation as supporting the quoted text. The case is not squarely in point because the mortgage there was given to a party having a mechanic's lien recognized in the insurance policy. The court does state in the opinion that the chattel mortgage would not have the same effect of changing or destroying the insurable interest of the policy holder and that it would not affect or change the plaintiff's interest in the property. The court states:

"The chattel mortgage is but a security for a debt, the ownership remaining in the mortgagor. \* \* \* The plaintiff, both before and after the mortgage, held the ownership of the property subject to the interest of Johnson & Rhode. There was therefore no change in the title, ownership, or possession of the property wrought by the chattel mortgage, which, therefore, did not avoid the policy. \* \* \*" 49 N.W. 994.

In Ayers v. Hartford Fire Ins. Co., 17 Iowa 176, the court in considering a

policy prohibition against sale, transfer or change of title holds a mortgage is not regarded as an alienation or sale so as to avoid policy liability. On the issue of transfer or change in title, the court states:

"Is *title* here used as synonymous with ownership, and must the *actual* ownership change in order to avoid the policy? or is the policy avoided, if the form or *evidence* of the title is changed, provided the actual and the real ownership remains the same? * * * Words of doubtful meaning, or susceptible of two fair interpretations, should, especially in view of the well known fact that insurance companies frame the contract, to be construed to uphold, rather than avoid the policy (Wilson v. Conway Insurance Company, 4 R.I., [141] 156); and on this principle, two of the three judges taking part in this decision, are of the opinion, that the *change* or *transfer* of *title*, to be in violation of the policy, must be more than nominal. * * * But if the real ownership remains the same—if there is no change in the *fact* of *title*, but only in the evidence of it, and if this latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not violated." 17 Iowa 185–186.

See also Ayers v. Hartford Fire Ins. Co., 21 Iowa 193, 198.

In Collins v. Merchants' & Bankers' Mut. Ins. Co., 95 Iowa 540, 64 N.W. 602, the policy provision was that the insurance was void if the insured property be in any manner incumbered and such fact be not stated in the policy or application. The court interpreted this forfeiture provision as applying only to incumbrances existing at the time of the policy, stating, "The words used are certainly open to this construction, and, if so, we would adopt that which is most favorable to the assured under all the established tenets."

Ellis v. State Ins. Co., 61 Iowa 577, 16 N.W. 744, and Lee v. Agricultural Ins. Co., 79 Iowa 379, 44 N.W. 683, relied upon by defendant and the trial court, each involved the effect of a specific provision making the policy void if the insured property is incumbered.

■■ In our present case, Section 18 declares the policy void if a voluntary change takes place in the interest, title possession or use of the insured property. No specific mention is made of incumbrance in this section. Section 20 is headed "Incumbrance". This would be the natural place for the insured to look for provisions relating to incumbrance. This section expressly states that incumbered property may be insured. It also provides that a mortgage clause be attached if the policy is returned to the secretary for that purpose. There is no express provision giving the secretary any discretion or right to refuse to issue the mortgage clause. In contrast to the situation with reference to the violation of Section 18 conditions, we find no express provision making the policy void if the insured incumbers the property. It is probably fair to say that the Iowa court has not specifically passed on the problem here presented. It would appear, however, from the cases hereinabove set out that the Iowa court leans strongly to the position of narrowly construing forfeiture provisions of insurance policies. It would also appear from the statements of the court hereinabove set out that it is unlikely that the Iowa court would under the circumstances of this case hold that an incumbrance as a matter of law was a violation of the change in interest or title provision of the policy. We are persuaded that when the bylaws are read as a whole they cannot be interpreted as compelling a construction that the giving of an incumbrance upon the insured property works a forfeiture. We believe that the contract is at least ambiguous in this respect. In case of ambiguity, parol evidence is admissible to aid the court in construing the contract, and the Government should have an opportunity to offer evidence to aid the

court in the construction of the provision in question.

■ The trial court's opinion also reflects that the plaintiff urged that defendant had waived any right to treat the policy as forfeited because of the CCC mortgage. The trial court disposes of this issue as follows:

"The defendant's payment of the $1,250 loss, on the corn not mortgaged, did not operate as a waiver of the defense it had under the 'any change of interest * * *' condition in the policy, against demands for loss payment on corn which had been mortgaged. The cases cited, Webber v. Harrison County Mut. Fire & Lightning Ins. Ass'n, 227 Iowa 793, 288 N.W. 868 (1939) and Neiman v. City of New York Ins. Co., 202 Iowa 1172, 211 N.W. 710 (1927), as being in support of a waiver having been effected, are not in point and the general rule is as stated in 17 C.J.S. [Contracts], Section 405, page 894:

" 'As in the case of other stipulations in a contract for his benefit, a party entitled to terminate a contract under its own terms may waive the right so to do, even though notice of intention to terminate has been given. *However, a provision in a contract for cancellation may be resorted to after a continuing breach, although at first the party entitled to cancel chooses to regard the contract as subsisting. * * *'* (Emphasis supplied.)"

The C.J.S. quotation incorporated in the trial court's opinion clearly recognizes the general rule that a party entitled to forfeit a contract may waive his right so to do. Such is the rule recognized by the Iowa court.

In Webber v. Harrison County Farmers Mut. Fire & Lightning Ins. Ass'n, 227 Iowa 793, 288 N.W. 868, 871, where the defendant was a mutual insurance association such as our present defendant, the court states and applies the rule to the effect that, "Forfeiture clauses and conditions against transfer of title, encumbrances, etc., are for the protection of the company against increase of hazard without their knowledge and consent and may be waived." See also Thompson v. Patrons Mut. Fire Ins. Ass'n, 231 Iowa 168, 300 N.W. 642; Neiman v. City of New York Ins. Co., 202 Iowa 1172, 211 N.W. 710.

17 C.J.S. Contracts § 409 states:

"Provisions for forfeiture may be waived by the person entitled to enforce them, either expressly or by implication, and the courts as a rule are quick to take advantage of circumstances indicating such an intention, although a waiver cannot be inferred from mere silence. Any inconsistent acts or dealings will be regarded as a waiver * * *."

In Hemmings v. Home Mut. Ins. Ass'n, 199 Iowa 1311, 203 N.W. 818, 821, waiver is defined as "an intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." The court found that an adjuster, with knowledge of the mortgage, adjusted the loss, made out proofs, and promised early payment. The court held that such evidence established a waiver of the bylaw invalidating the policy upon incumbrance of the insured property. The court also observes that a waiver, though without consideration, cannot be retracted, and that a waiver arising from conduct usually presents a fact issue for a jury.

We have no quarrel with defendant's contention that waiver is an affirmative defense which must be pleaded. Here the defendant had filed no answer asserting the forfeiture. The Government had no opportunity to plead waiver. Until the defendant raised the forfeiture defense there was no occasion for the Government to plead that such defense was waived. The forfeiture defense was first presented in oral argument on the motion to dismiss. The trial court's opinion discloses that the Government in such argument asserted that the forfeiture, if it existed, had been waived.

The policy and endorsements thereto as set out as an exhibit to the complaint afford a basis for an inference that defendant may have continued to treat the policy as an existing obligation after it learned of the CCC mortgage. The fire loss occurred on February 7, 1959. The insurance on corn totalled $3,000. The court's opinion shows that $1,250 of such insurance was paid to North for loss of corn on the farm that was not mortgaged. In addition, there was more than 6,000 bushels of mortgaged corn destroyed by the fire. There is no explanation in the record of the circumstances under which the $1,250 payment was made. Defendant in its brief states that such payment may have been the result of a compromise. But such statement is entirely speculative and without record support. It would seem probable that the defendant learned of the Government mortgage before the $1,250 payment was made. Otherwise, defendant likely would have paid North the full $3,000 coverage on the corn.

An endorsement attached to the policy and dated February 14, 1959, shows that insurance on an elevator crib in the amount of $5,000 is cancelled because said building was totally destroyed by fire. This apparently was the crib in which the corn was stored. The crib, the corn and other described property were all covered by the same policy of insurance. If the loss on the crib was in fact paid, such payment would be substantial evidence in support of waiver of the claimed forfeiture.

On April 6, 1959, an endorsement was made to the insurance policy calling for $3,000 additional coverage for an additional premium. Such policy addition and collection of additional premium therefor would appear to be inconsistent with defendant's view that the policy was terminated for breach of condition.

Enough has been said to demonstrate that material factual issues are presented, the resolution of which could affect the result of this case. The defendant has not demonstrated beyond doubt that the Government would be entitled to no relief under any state of facts that could be proved in support of its claim. The court was not warranted upon this record to dismiss, and was not justified in entering a summary judgment of dismissal.

Other issues raised upon this appeal can best be determined after the trial of this case upon its merits.

The order appealed from is reversed and this case is remanded with direction to reinstate the Government's complaint and to try the case on the merits.