REIMOLD *v.* FARMERS' MUTUAL FIRE INSURANCE CO.

INSURANCE—FIRE—WAIVER OF FORFEITURE.

In an action on a policy of fire insurance of an intestate brought by a son and administrator, to whom the parties in interest assigned their rights, commenced after the discharge of the administrator and assignment of the real estate by the probate court and by act of the heirs, a waiver of forfeiture for breach of the terms of the policy is established by a showing that, although they had knowledge of the transfer of the property, the officers of the insurer made no objection on that ground, and dealt with him as if they intended to pay the loss, making no tender of assessments paid until after the institution of suit, and that in reliance on their action plaintiff employed attorneys and expended money.

Error to Macomb; Erskine, J. Submitted April 6, 1910. (Docket No. 11.) Decided July 14, 1910.

Assumpsit by Charles J. Reimold against the Farmers' Mutual Fire Insuance Company on a policy of insurance. A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Affirmed.

*Henry J. McKay* and *William T. Hosner*, for appellant.

*William T. Kelly* and *John A. Weeks*, for appellee.

McALVAY, J. This suit is brought by plaintiff against defendant company to recover upon insurance policy No. 3194, issued by it December 6, 1887, to J. J. Reimold, for a loss claimed to have been sustained thereunder.

The facts in the case are not in dispute. It appears from this record that J. J. Reimold died intestate, February 14, 1900, leaving surviving him a widow and eight children. The plaintiff, a son, was appointed adminis-

trator of his estate, March 19, 1900, and entered upon the duties of his office. The estate consisted of personal and real property. On or about February 29, 1904, he filed a final account in the probate court for Macomb county, petitioning for its allowance, and on April 5, 1904, an order was entered in said court allowing said account as presented, assigning the residue of the estate, consisting of real property, to the widow, who was also described as assignee of all of the children, and the administrator was declared discharged and his bond canceled. The petition for this order stated that the children had all joined with him and released all claims to the personal property to their mother. The order makes no disposition or mention of the personal property, and the record shows that it was never divided, or any agreement entered into in regard to it. A quitclaim deed of the real estate was made by all of the children to their mother on or before April 12, 1904.

The loss by fire caused by lightning, for which suit was brought, occurred September 1, 1907, destroying one of the barns and contents covered by the policy. The entire amount of insurance carried by the policy was $5,057, and this loss is agreed to have amounted to $2,175.87. All fees, dues, and assessments, under this policy, from the date of its issue until the fire occurred, were paid in full and receipted for by defendant. After the death of the father they were paid by plaintiff or some member of the family. While acting as administrator, plaintiff, on August 2, 1901, applied for and was granted additional insurance of $1,000 under this policy, receiving a receipt describing him as administrator, and "a member of said corporation for the register and membership fees on additional insurance under policy 3194."

After the fire, plaintiff immediately notified the company of the loss, and the president, secretary, and a director, being the official adjusters of defendant, at once came and looked over the loss. Upon being asked by the president if he was administrator of his father's estate, he replied that he was, and his testimony is that he believed

that he was.   Ten days later the full board of directors of defendant examined the loss in a body.   Plaintiff met them at the creamery, in Mt. Clemens, where he worked, after they had been to the farm.   At this meeting the items of loss as mentioned were discussed, and the officers told plaintiff some of them were too high.   They asked him if he would stand a cut, to which he replied that he would not.   They offered him about $1,940 or $1,950, which he did not accept.   The proofs of loss had been made out by him, and were given to the officers of the company at the time they were at the house.   These proofs were sworn to before defendant's secretary, a notary public, September 30, 1907, at an appointed meeting of the board of directors with him, and are signed by plaintiff as administrator.   His recollection is that he was requested to sign as administrator by some member of the company. At this meeting the items of loss were discussed without result.   On November 1, 1907, an assignment was made by the widow and heirs at law of J. J. Reimold to plaintiff, of all their rights and interest in this policy.   In December plaintiff and his attorney, Mr. Weeks, met the secretary of defendant at the hotel in Mt. Clemens, and asked why the company did not pay the loss.   He replied that it was because of a transfer.   He said that the company would pay when they found out whom to pay it to. The secretary informed them that he would arrange for a meeting and notify the attorney to be present.

A witness testified that on this day the secretary told him plaintiff should have had the policy changed when he was discharged as administrator; that a meeting of the directors would be held soon, and he thought without doubt the claim would be settled; the only question was whom to settle with.   This witness on the following day related this conversation to plaintiff, and, relying upon this, he employed counsel to adjust the loss.

Plaintiff did not personally attend any later meetings of the company's directors.   On January 14, 1908, the secretary, by order of the president of the company, wrote a

letter to plaintiff's attorney, notifying him to attend a meeting to be held at his office to consider the Reimold matter. Two attorneys appeared at this meeting of the board authorized to act for plaintiff. The matter was fully discussed. The items of the claim were considered, and the fact that plaintiff had signed the proofs as administrator was mentioned. The president stated that they would like to settle the loss; that the estate had been closed, that a deed had been made to the widow, and there was a question whether the board had the power to settle a loss of this kind. They did not say that they would not pay the loss at this meeting or at any meeting. Because defendant's attorney was not present nothing was done. It was understood that another meeting would be held when defendant's attorney would be present. Plaintiff's attorneys were notified of such meeting and attended. At this the same matters were gone over. Defendant's officers stated that they would advise later what their decision would be. At the third meeting plaintiff was represented as before. The president stated that they had pressing business, and it would be impossible to discuss the Reimold matter. Plaintiff incurred an expense of more than $100 after he employed his attorneys before liability was denied by defendant.

No portion of the dues and assessments paid by plaintiff after his father's death were tendered or returned up to the time of the trial of the case. During the trial defendant's attorney tendered into court about $75,—

" Representing all moneys paid to the company after the closing of the estate, or such times as the proofs should show the policy to have been canceled as claimed by the company, and all costs taxable at the time of tender; and, further, that such tender was made without conceding liability in any other manner."

Defendant offered no proofs, and, at the close of plaintiff's case, asked for a directed verdict. This was denied, and a verdict was instructed for plaintiff, upon the ground

that defendant had waived the claimed forfeitures of the insurance policy. A motion for a new trial was made by defendant and denied.

The case is before us on writ of error. But one question of importance is presented, and that is whether the court was in error in holding that defendant had waived the claimed forfeitures of this policy. We are satisfied that the admitted facts above stated warranted the action of the court.

The claimed breaches of the policy upon which defendant relies are (1) that the estate of J. J. Reimold was closed; (2) that there was a change of title by deed from the heirs to the widow. The deed to the widow was duly recorded April 12, 1904. The fire occurred September 1, 1907. Other facts already stated need not be repeated. It is only necessary to state that after full personal knowledge of the closing of the father's estate and the transfer to the widow, the secretary and other officers of the company without repudiating the claim of plaintiff, continued to deal with him as if they intended to pay the loss he claimed. Notice was given to his attorney to meet with the officers. Plaintiff in good faith relied upon what the secretary said, and went to large expense employing attorneys to attend these meetings. It was the duty of defendant's officers when knowledge of these claimed breaches of the policy came to them, to promptly repudiate liability. *Carpenter* v. *Insurance Co.*, 61 Mich. 635 (28 N. W. 749); *Cleaver* v. *Insurance Co.*, 71 Mich. 414 (39 N. W. 571, 15 Am. St. Rep. 275), and cases cited; 13 Am. & Eng. Enc. Law (2d Ed.), p. 257, and cases cited. Defendant, after full knowledge of the facts, did not return or tender any assessments paid after the claimed forfeitures occurred, until after suit was brought. Such retention of these assessments amounted to a waiver even if the insurer at the time when payments were made did not have notice of such forfeitures. 19 Cyc. p. 798c, and cases cited.

Upon the question whether there were in fact any forfeitures of this policy, as claimed by defendant, under the circumstances of this case, we express no opinion. Upon the question of waiver we are in accord with the trial court.

The judgment is affirmed.

MOORE, BROOKE, BLAIR, and STONE, JJ., concurred.