DON E. NEIMAN, Trustee, Appellee, v. CITY OF NEW YORK INSURANCE COMPANY, Appellant.

**INSURANCE: Change in Title—Non-assignment of Policy—Waiver.** An
1  insurer who knows, through his agent, that the property covered by the policy has been transferred to another, and continues to treat the policy as in force, by collecting and retaining the premiums, may not thereafter defensively assert such change of title or that no formal transfer of the policy had been made. (See Book of Anno., Vol. 1, Sec. 9018, Anno. 160 *et seq.*)

**INSURANCE: Agents—Authority To Waive Policy Provisions.** An
2  insurer which permits its agent to issue a policy in the name of the

insurer, to collect the premiums, and to attach riders to the policy, under which it claims advantages, may not say that said agent did not have authority to waive policy provisions.

**INSURANCE:  Coinsurance—Unsigned Rider.**  A coinsurance rider which 3 is not signed by the insured is a nullity though it is attached to the policy.

Headnote 1:  26 C. J. pp. 323, 324, 325.  Headnote 2:  26 C. J. p. 287. Headnote 3:  26 C. J. p. 357.

Headnote 2:  14 R. C. L. 1170.

*Appeal from Polk District Court.—*JOHN FLETCHER, Judge.

JANUARY 11, 1927.

Action at law, to recover upon a policy of fire insurance for the loss by fire of the property insured.  At the close of the evidence, the court overruled the motion of the defendant for a directed verdict in its favor, and sustained in part a like motion by the plaintiff.  Defendant appeals from the judgment against it, and the plaintiff appeals from the order overruling his motion for judgment for the full amount of the policy notwithstanding the verdict.—*Affirmed on defendant's appeal; reversed on plaintiff's appeal.*

*Wilson & Shaw* and *Tom K. Murrow,* for appellant.

*Stipp, Perry, Bannister & Starzinger,* for appellee.

VERMILION, J.—The defendant first perfected its appeal, and is designated as the appellant.

The facts are not in dispute.  The appellant introduced no testimony.  The policy was issued to one Danenbaum, covering certain equipment and merchandise in a bakery.  Thereafter, the

1. INSURANCE: change in title: non-assignment of policy: waiver.

business conducted by Danenbaum was consolidated with that of another concern, and title to the insured property was transferred to the Electric Bakery Company, a corporation.  Following this, the property of the Electric Bakery Company, including that covered by the policy, was transferred to the appellee, as trustee for creditors.  At the time of the loss, there had

been no written assignment of the policy by either Danenbaum or the Electric Bakery Company, and no written consent by the insurance company to an assignment of the policy or to either of the transfers of the property.

The policy provides that it shall be void, unless otherwise provided by agreement of the company, if any change, other than by the death of the insured, shall take place in the title of the subject of insurance, or if the policy be assigned before loss.

The appellant pleaded the invalidity of the policy, under the foregoing provisions; while appellee pleaded that the company, with knowledge of the transfers, waived the provisions of the policy in this respect, and was estopped to rely thereon. Upon the issues so framed, the court, at the close of the evidence, overruled a motion by the defendant for a directed verdict, and sustained that of the plaintiff. The appeal of the defendant challenges these rulings.

The facts relied upon as an estoppel or waiver, briefly stated, are these: The policy was issued and countersigned by J. Gottlieb & Son, as agents. At the time of the transfer of the property to the Electric Bakery Company, Danenbaum informed S. Gottlieb, a member of the firm of J. Gottlieb & Son, of a change of location of the property, and of the transfer of the title, and requested the necessary changes in the policy, which Gottlieb said would be made. The agents did at that time attach to the policy written permission for the removal of the property to the new location, but no written consent to the transfer of title. S. Gottlieb's attention was called to this, and he again said he would attend to it, but did not do so. Thereafter, he presented at the place of business of the Electric Bakery Company a statement of account against Danenbaum for insurance premiums, which included the premium for the policy in question, and received the check of the Electric Bakery Company in payment of the balance due, as shown by the totals of the statement. A few months thereafter, the Electric Bakery Company became involved in financial difficulties, and the operation of its business was taken over by a committee of creditors. Written notice of this action was given to Gottlieb & Son. A short time later, the bakery company executed a trust deed, conveying its property, including that covered by the policy in question, to the appellee, as trustee for its creditors.

There was a mistake in addition on the credit side of the statement of insurance premiums presented by S. Gottlieb to Danenbaum, which had been paid, according to its stated balance, by the check of the Electric Bakery Company, and the amount of the check did not, in fact, equal the amount then actually due Gottlieb & Son for insurance premiums. After the execution of the trust deed to appellee, J. Gottlieb & Son wrote to Danenbaum:

"Would you be so kind as to send us your check for $47.52 in order that we may balance your insurance account which you owe at this time on our books?"

In reply, appellee wrote the agents as follows:

"Your letter of August 9th addressed to Mr. Ed Danenbaum has been referred to me, and I would appreciate your informing me as to what the insurance policy in question covers as I am trustee for the Electric Bakery Co."

The original of this letter was not produced, and the typewritten carbon copy introduced in evidence did not contain the signature of appellee, but, at the usual place for a signature, appeared the typewritten words: "Adjustment Bureau," with a space for signature, followed by the abbreviation "Mgr." Appellee testified, however, that he wrote and mailed the letter. On the following day, Gottlieb & Son wrote the Des Moines Credit Men's Association, of which appellee was secretary, saying:

"We have referred your letter to the Southern Surety Company, and they in turn will take this matter up with you."

A letter from the Southern Surety Company, addressed to the Des Moines Credit Men's Association, "Attention Mr. John E. Neiman, Mgr.," shows that the matter of the collection of the balance due on the account had been referred to it by Gottlieb & Son.

I. Some question is raised by the appellant as to the authority of J. Gottlieb & Son, as agents of the insurance company, to waive the provisions of the policy with respect to the change of title of the insured property and the assignment of the policy.

The policy provided that it should not be valid until countersigned by the insurer's duly authorized agent at Des Moines. It was duly countersigned by J. Gottlieb & Son, as agent, and

2. INSURANCE: agents: authority to waive policy provisions.

issued by that firm, and the premium, so far as paid, was collected by that firm. The validity of the policy as so issued is not questioned. J. Gottlieb & Son, as agent, executed a co-insurance rider, attached to the policy, upon which appellant relies, and also the removal permit, which is not questioned. We think that the authority of the agent to waive the provisions in question is shown. Section 9004, Code of 1924. In *McDonald v. Equitable Life Assur. Soc.*, 185 Iowa 1008, we said:

"The authority of agents, so far as the public with whom they deal is concerned, is controlled not so much by the terms of their employment, or even by the terms of the policies which they procure for applicants, as by the things which the principal permits them to do, and by the nature and extent of the business for which they are employed, and permitted to carry on."

See, also, *Johnson v. Farmers Ins. Co.*, 184 Iowa 630; *Liquid Carbonic Acid Mfg. Co. v. Phoenix Ins. Co.*, 126 Iowa 225.

II. It is beyond question, upon the record, that, at the time J. Gottlieb & Son received payment of the apparent and claimed balance of the account for insurance premiums, the member of that firm who transacted the business in connection with the policy had knowledge of the transfer of the insured property to the Electric Bakery Company. And, while the evidence is not quite so conclusive, we are of the opinion that it is also shown that the agents had knowledge of the title of appellee, as trustee, at the time it thereafter made a demand for the true balance of the account. In response to its demand upon Danenbaum for payment, it was advised that appellee was trustee for the bakery company, and in reply wrote the association of which appellee was secretary, that the matter was referred to the Southern Surety Company, which would take it up.

In this connection, it is contended by appellant that the amount then unpaid on the account of Gottlieb & Son was due the Southern Surety Company. But, if the whole amount then demanded belonged to the surety company, it must follow that the whole of the premium on the policy in question had been paid by the check of the bakery company, and the appellant is in the position of claiming a forfeiture of the policy because of facts of which its agent had knowledge, without returning, or offering to return, any part of the premium received.

The policy contained the usual provision for its cancellation by the insurer (see Section 8960, Code of 1924), and provided that, when the policy was so canceled, the unearned premium should be returned, the company retaining only the pro-rata premium. The policy covered the year beginning December 22, 1923. The transfer of the property to appellee as trustee was made July 21, 1924. The correspondence between appellee and Gottlieb & Son was in August, 1924. If all the premium had been paid, it is apparent that, at the time appellant's agent learned of the transfer to appellee, a portion of it was unearned.

That the insurance company was bound by whatever knowledge with respect to the property insured was possessed by its agent, is well settled. *Stone v. Hawkeye Ins. Co.*, 68 Iowa 737; *Hagan v. Merchants & Bankers' Ins. Co.*, 81 Iowa 321; *DeBolt v. German American Ins. Co.*, 181 Iowa 671; *Padrnos v. Century F. Ins. Co.*, 142 Iowa 199; *Wilson v. Anchor F. Ins. Co.*, 143 Iowa 458.

It is also well settled that, although by the terms of the policy it is provided that a change of ownership of the insured property will defeat the rights of the assured or of an assignee of the policy, the insurer may consent to carry the risk notwithstanding the change of title; and when, with knowledge of the fact that the title to the property has changed, it receives the premium stipulated for in the policy, it thereby elects to continue the policy, with whatever moral hazard may attach to the change of ownership; and this is true although there is no written assignment of the policy. *State Cent. Sav. Bank v. St. Paul F. & M. Ins. Co.*, 184 Iowa 290; *Bechly v. Central Nat. F. Ins. Co.*, 195 Iowa 177; *DeBolt v. German American Ins. Co.*, supra; *Padrnos v. Century F. Ins. Co.*, supra. And if, with knowledge of the facts constituting a forfeiture of the policy, the insurer continues to treat the contract as of binding force, and induces the insured to act in that belief, the forfeiture is waived. *Hollis v. State Ins. Co.*, 65 Iowa 454; *Bloom v. State Ins. Co.*, 94 Iowa 359; *Glasscock v. Des Moines Ins. Co.*, 125 Iowa 170; *Medearis & Bowen v. Anchor Mut. F. Ins. Co.*, 104 Iowa 88.

It is the almost universal holding of the courts generally that, where an insurance company knows of a transfer of the insured property, or of other facts which, according to the terms of the policy, would, without its consent thereto, render the pol-

icy void, but does not cancel or attempt to cancel the policy, and retains the premium paid by the insured, and treats the contract as valid, it waives any forfeiture of the policy based thereon. *Kaskaskia L. S. Ins. Co. v. Harvey Bros.*, 93 Okla. 107 (219 Pac. 672) ; *Security Ins. Co. v. Cook*, 99 Okla. 275 (227 Pac. 402) ; *Reimold v. Farmers' Mut. F. Ins. Co.*, 162 Mich. 69 (127 N. W. 17) ; *Baughman v. Niagara F. Ins. Co.*, 163 Minn. 300 (204 N. W. 321) ; *Yusko v. Middlewest F. Ins. Co.*, 39 N. D. 66 (166 N. W. 539) ; *Martin v. Continental Ins. Co.* (Mo. App.), 256 S. W. 120 ; *Hamilton v. Fireman's Fund Ins. Co.* (Tex. Civ. App.), 177 S. W. 173 ; *National L. S. Ins. Co. v. Owens*, 63 Ind. App. 70 (113 N. E. 1024) ; *Twin City Fire Ins. Co. v. Stockmen's Nat. Bank*, 261 Fed. 470 ; *St. Paul F. & M. Ins. Co. v. Ruddy*, 299 Fed. 189.

It is held that an unconditional demand for past-due premium waives a provision of the policy that the insurer should not be liable for a loss occurring while any part of the premium was past due and unpaid. *Limerick v. Home Ins. Co.*, 150 Ky. 827 (150 S. W. 978) ; *Security Life & Ann. Co. v. Underwood* (Tex. Civ. App.), 150 S. W. 293. See, also, 26 Corpus Juris 323, 325.

Whether it be considered that, with knowledge, through its agent, of the transfer to appellee, the appellant demanded the payment of an unpaid portion of the total premium, or retained the premium previously paid in full, the effect would be the same. It thereby treated the policy as a binding and valid contract.

It is clear, under the doctrine of the authorities cited and the undisputed facts, that the appellant, by accepting payment of a portion of the premium and demanding payment of the balance, or failing to return the unearned portion of what had been paid, with knowledge of previous transfers of the title, recognized the validity of the contract, and must be held to have waived the right to now insist on its invalidity because of such transfers.

III. The only question presented on the appeal of the plaintiff is as to the validity of the coinsurance rider, attached to the policy. There was no question but that plaintiff, if entitled to recover at all, was entitled to the full amount of the insurance under the policy, save as his right was affected by the coinsurance rider, if

3. INSURANCE:
   co-insurance:
   unsigned rider.

valid. It was stipulated by the parties on the trial that, if the plaintiff was entitled to recover and the coinsurance clause was valid, the amount of his recovery should be diminished by the sum of $150. The directed verdict was for the face of the policy, so diminished. The plaintiff's motion for judgment for the full amount of the insurance notwithstanding the verdict raised the question of the validity of the coinsurance rider.

Section 8990 of the Code of 1924, as amended by Chapter 169, Acts of the Forty-first General Assembly, declares that any provision of a policy of fire insurance providing that the insured shall maintain insurance on the property covered to any extent, or be an insurer of the property insured, or shall bear any portion of the loss on the property, shall be invalid.

Section 8991 provides that, on the written request of the insured, a rider providing for coinsurance may be attached to and become a part of the policy, except that it shall not apply to dwellings or farm property. Section 8992 requires, among other things, that the request for coinsurance shall be signed by the insured, and a copy left with him. Section 8994 requires that the coinsurance rider shall be signed by both the agent and the insured.

There is attached to the policy in question a coinsurance rider, providing that the insured shall maintain insurance on the property insured, to the extent of 90 per cent of its actual cash value at the time of loss, and that, failing to do so, the insured shall be a coinsurer to the extent of such deficit. There is also attached to the policy a form of request for such a coinsurance rider. Neither the request nor the rider is signed by the insured. The question is fully and explicitly covered by the statute, and the statute is mandatory. The coinsurance rider attached to the policy did not conform to the requirements of the statute, and is void. The plaintiff was entitled to judgment for the full amount of the policy, with interest.

It follows that the cause is, on the defendant's appeal, affirmed, and on the plaintiff's appeal, reversed.—*Affirmed on defendant's appeal; reversed on plaintiff's appeal.*

EVANS, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.