# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE DAHLMANN,

          Plaintiff-Appellant/Cross-Appellee,

v

GEICO GENERAL INSURANCE COMPANY,
d/b/a GEICO CASUALTY COMPANY,

          Defendant-Appellee/Cross-
          Appellant,

and

FRANKENMUTH MUTUAL INSURANCE
COMPANY,

          Defendant/Cross-Appellee.

UNPUBLISHED
March 22, 2016

No. 324698
Ottawa Circuit Court
LC No. 13-003393-NF

MICHELLE DAHLMANN,

          Plaintiff-Appellant,

v

GEICO GENERAL INSURANCE COMPANY,
d/b/a GEICO CASUALTY COMPANY,

          Defendant-Appellee,

and

FRANKENMUTH MUTUAL INSURANCE
COMPANY,

          Defendant.

No. 325225
Ottawa Circuit Court
LC No. 13-003393-NF

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

-1-

These consolidated appeals[1] arise from a dispute over the payment of no-fault personal protection insurance benefits (PIP benefits) to plaintiff, Michelle Dahlmann. In its cross-appeal in Docket No. 324698, defendant, Geico General Insurance Company, argues that the trial court erred when it determined that it had to pay PIP benefits to Dahlmann. Geico maintains that, even though it insured Dahlmann's motor vehicle, it did not issue her an automobile insurance policy under Michigan's no-fault law and it was otherwise not obligated to pay her no-fault benefits under Michigan law; rather, it states, Frankenmuth Mutual Insurance Company was alone obligated to pay Dahlmann PIP benefits as the insurer of the driver of the motor vehicle that struck her. In her appeal in Docket No. 324698, Dahlmann argues that the trial court erred when it determined that Geico's refusal to pay PIP benefits was not unreasonable and, on that basis, refused to order Geico to pay Dahlmann's attorney fees. In Docket No. 325225, Dahlmann appeals the trial court's decision to exclude certain deposition costs and judgment interest from the award of taxable costs. On appeal, we conclude that the trial court erred when it determined that Geico had to pay Michigan no-fault benefits to Dahlmann. Because the undisputed evidence established that Dahlmann was domiciled in this state, we hold that Geico was not obligated under Michigan law to pay her no-fault benefits.[2] Accordingly, we reverse and remand for entry of summary disposition in Geico's favor.

## I. BASIC FACTS

Dahlmann testified at her deposition that she lived in Michigan until she moved to Virginia in 2009. Although she lived in Virginia, Dahlmann renewed her Michigan driver's license in 2011. In 2012, she lived in an apartment in Virginia with her husband and children. Her husband was a sailor in the navy and his duty station was in Norfolk. The navy deployed him to sea in July 2012, but, for operational security, the navy did not provide them with exact begin and end dates of his deployment. She was told that it would last seven to nine months.

The lease on her apartment in Virginia had gone month-to-month in 2012. She decided to leave the apartment and moved her family's furniture and most of their belongings into a storage unit in Virginia. She also cancelled her internet and stopped paying rent, thus terminating their lease. Then, at the end of 2012, Dahlmann packed up her van and took her three children to visit family; she first visited her mother-in-law in Thomson, Georgia, then her mother in Atlanta, Georgia, and then her sister in Casper, Wyoming. After visiting with her sister, she drove to Lansing, Michigan to visit additional family. She arrived around January 13, 2013.

Shortly after arriving in Lansing, she used her power of attorney to rent an apartment in her husband's name. She rented the apartment because she knew she would be in Michigan for at least a couple of weeks and, until her husband returned and got his new orders, they were at a

---

[1] See *Dahlmann v Geico General Ins Co*, unpublished order of the Court of Appeals, entered February 3, 2015 (Docket Nos. 324698 & 325225).

[2] Because the parties have framed the issue as whether Geico had an obligation to pay Dahlmann benefits under Michigan's no-fault law, we have limited our analysis accordingly.

standstill. She did not worry about the year-long lease because she claimed she could sublease the apartment to her brother and thought that military families are able to break a lease without penalty under certain circumstances. She did not have furniture or anything they could use to live at the apartment long term. She agreed that she intended to stay in the apartment until she learned where her husband would be assigned.

A few days later, Dahlmann was injured in an incident involving a motor vehicle. She was stopped at a traffic light when another driver, later identified as Gregory Romig, got out of his vehicle and walked up to her van. In an apparent incident of road rage, he started punching her door and window. He damaged her door's frame and Dahlmann called 911. Romig then returned to his vehicle and Dahlmann got out of her van to take a photo of his license plate. Romig attempted to drive away and struck Dahlmann.

Dahlmann insured her van with a policy from Geico, which it issued when she still lived in Virginia. Dahlmann informed Geico that she believed it was obligated to provide her with PIP benefits under Michigan's no-fault act, but Geico refused to pay. In June 2013, Geico sent Dahlmann's lawyer a letter stating that it disclaimed any liability under its policy because Dahlmann had become a resident of Michigan and did not have a Michigan no-fault policy.

In July 2013, Dahlmann sued Geico for breach of contract, for violating Michigan's no-fault act, and for declaratory relief concerning the application of Michigan's no-fault act. In September 2013, Dahlmann amended her complaint to state a claim for no-fault benefits against Frankenmuth as Romig's no-fault insurer. Although it was Frankenmuth's position that Geico had to pay PIP benefits to Dahlmann, it accepted responsibility for paying Dahlmann's claims in October 2013, subject to its right of recovery.

In March 2014, Geico moved for summary disposition. It argued that the undisputed evidence showed that its automobile insurance policy did not include no-fault benefits under Michigan law. In addition, although Geico conceded that it had filed a certificate of no-fault coverage under MCL 500.3163, it argued that MCL 500.3163 did not apply because Dahlmann's van was not involved in the accident at issue and Dahlmann was not an "out-of-state resident" when the accident occurred.

Dahlmann argued that the trial court should deny Geico's motion and grant summary disposition in her favor under MCR 2.116(I)(2). Specifically, she argued that Geico was estopped from arguing that it had no obligation to provide PIP benefits under MCL 500.3163 because it did not assert that ground when it originally denied Dahlmann's claim. Rather, it maintained that Dahlmann had to purchase a Michigan no-fault policy because she was in Michigan for 30 days. See MCL 500.3102(1). Under the "mend the hold" doctrine, Dahlmann stated, Geico was estopped from asserting any additional grounds for denying her claim. Dahlmann additionally argued, along with Frankenmuth, that the evidence showed that Dahlmann was not a resident of Michigan.

In May 2014, the trial court issued an opinion and order denying Geico's motion for summary disposition and granting summary disposition in Dahlmann's favor. The court determined that the undisputed evidence showed that there was an "active link" between Dahlmann's vehicle and "the injury in the chain of circumstances leading to the injury." It also

stated that the undisputed evidence showed that Dahlmann was not a resident of Michigan at the time of the accident. It reasoned that there was no evidence that Dahlmann intended to change her domicile to the apartment in Lansing. Because one's domicile remains the same until changed, it concluded that Dahlmann was still domiciled in Virginia. Thus, the trial court determined that MCL 500.3163 applied and Geico was legally obligated to pay PIP benefits to Dahlmann.

In June 2014, Dahlmann moved for an order compelling Geico to pay her attorney's fees and penalty interest. The trial court found that Geico's position was not unreasonable and determined that Dahlmann was not entitled to attorney fees. The trial court entered an order denying Dahlmann's motion later that same month.

In October 2014, the trial court entered a final order closing the case. It ordered Geico to reimburse Frankenmuth for the PIP benefits that Frankenmuth paid on Dahlmann's behalf. It also ordered Geico to pay penalty interest on the benefits that were the subject of the litigation. Dahlmann then appealed the trial court's denial of attorney fees in this Court in November 2014 and Geico cross-appealed the trial court's grant of summary disposition in Dahlmann's favor.

In November 2014, after Dahlmann submitted a bill of costs to the trial court, Geico objected that the bill included expenses for two depositions that could not be taxed because they were not filed with any clerk's office. It also objected to the inclusion of judgment interest because Dahlmann did not obtain a money judgment. The trial court ultimately denied Dahlmann's request for the costs associated with the depositions and denied her request for judgment interest. Dahlmann then appealed that decision in this Court as well.

## II. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW

On appeal, we shall first address Geico's claim that the trial court erred when it denied its motion for summary disposition. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Roberts v Salmi*, 308 Mich App 605, 612; 866 NW2d 460 (2014). This Court also reviews de novo whether the trial court properly selected, interpreted, and applied the relevant statutes. *New Products Corp v Harbor Shores BHBT Land Dev, LLC*, 308 Mich App 638, 644; 866 NW2d 850 (2014).

### B. NONRESIDENTS, REGISTRATION, AND NO-FAULT BENEFITS

Generally, every motor vehicle that is driven on a street or highway in Michigan must be registered. MCL 257.216. However, persons who are nonresidents of Michigan may be exempt from the registration requirement. MCL 257.216(a); see also MCL 257.34 (defining nonresident to mean "every person who is not a resident of this state"). A nonresident may operate or permit the operation of a motor vehicle in this state "if the vehicle at all times when operated in this state is duly registered in, and displays upon it a valid registration certificate and registration plate or plates issued for the vehicle in the place of residence of the owner." MCL 257.243(1).

If a motor vehicle must be registered in this state, the owner or registrant must "maintain security for payment of benefits under personal protection insurance [PIP benefits], property protection insurance, and residual liability insurance" during that period when "the motor vehicle is driven or moved on a highway." MCL 500.3101(1). Hence, a nonresident who is exempt from registering his or her motor vehicle does not normally have to maintain security for the payment of Michigan no-fault benefits. Nevertheless, if the nonresident "owner or registrant of a motor vehicle or motorcycle not registered in this state" operates or permits the operation of the motor vehicle or motorcycle "for an aggregate of more than 30 days in any calendar year," the owner or registrant must maintain security for the payment of Michigan no-fault benefits, even though he or she is exempt from registration. MCL 500.3102(1). Accordingly, every resident of Michigan who owns a motor vehicle that is driven on Michigan's highways must register the vehicle and insure the vehicle with a Michigan no-fault policy. A nonresident does not have to register his or her vehicle in Michigan in order to drive it on Michigan's highways and does not have to insure his or her motor vehicle with a Michigan no-fault policy, if he or she drives the vehicle on Michigan's highways for not more than 30 aggregate days in any calendar year and otherwise displays a valid registration and plate from his or her state of residence.

In order to ensure fairness in and discourage abuse of the no-fault system, the Legislature enacted provisions that punish noncompliance with the no-fault act. In addition to other sanctions, if an owner or registrant does not maintain the security required under the no-fault act, the owner or registrant will not be "entitled" to collect PIP benefits from a Michigan no-fault insurer "for accidental bodily injury" involving the owner or registrant's vehicle MCL 500.3113(b). Likewise, the owner or registrant cannot obtain an award of noneconomic damages for his or her injuries that would otherwise meet the no-fault thresholds. See MCL 500.3135(2)(c).

Although a nonresident of Michigan does not have to purchase a Michigan no-fault policy in order to drive in Michigan, the nonresident's insurer may still be required to pay its nonresident insured the PIP benefits required under Michigan's no-fault act for injuries arising in Michigan:

> An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, is subject to the personal and property protection insurance system under this act. [MCL 500.3163(1).]

In the present case, it is undisputed that Dahlmann insured her van with an automobile liability insurance policy issued by Geico to her in Virginia and that her policy's terms did not include Michigan no-fault benefits. It is also undisputed that she was a resident of Virginia at the time Geico issued the policy and that Geico had filed the written certification required under MCL 500.3163(1). Consequently, if Dahlmann was an "out-of-state resident" at the time of her accident in Michigan, Geico might be liable to pay her Michigan no-fault benefits under MCL 500.3163(1). On the other hand, if Dahlmann had become a resident of Michigan before her

accident, Geico would have no obligation under MCL 500.3163(1) to pay her PIP benefits. See *Tienda v Integon Nat'l Ins Co*, 300 Mich App 605, 613; 834 NW2d 908 (2013).

## C. RESIDENCY AND DOMICILE

### 1. THE LAW

On appeal, the parties dispute whether Dahlmann was a resident of Michigan, but do so under the assumption that the Legislature used the term residence in the no-fault act as though it were synonymous with the term domicile. In *Tienda*, 300 Mich App at 615, this Court relied on our Supreme Court's statement in *Workman v DAIIE*, 404 Mich 477, 495; 274 NW2d 373 (1979), for the proposition that the terms residence and domicile were essentially synonymous under the no-fault act. However, after the decision in *Tienda*, our Supreme Court emphasized that courts must be careful to distinguish and apply the differences between the terms residence and domicile when construing the no-fault act. See *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 500-501; 835 NW2d 363 (2013). It also clarified that *Workman* should not be understood for the proposition that these terms should invariably be treated as synonymous. *Id.* at 498-501.

The Court in *Grange* explained that Michigan courts have long treated the term domicile to mean something more permanent than mere residency. "For over 165 years, Michigan courts have defined 'domicile' to mean the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* at 493 (quotation marks and citation omitted). Moreover, every person must have one and only one national domicile. *Id.* at 493-494. By contrast, a residence is any place of abode or dwelling, however temporary it might be. *Id.* at 494. The Court stated that the Legislature might use the term residence as the equivalent of domicile, but warned that domicile can never be equated with residence. *Id.* at 499.

> For purposes of distinguishing "domicile" from "residence," this Court has explained that "domicile is acquired by the combination of residence and the intention to reside in a given place. . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." The traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together. [*Id.* at 494-495 (citations omitted).]

The Court also emphasized that, in relevant part, a person's domicile remains the same until affirmatively changed by that person. *Id.* at 502.

In *Tienda*, this Court had to determine whether an itinerant agricultural worker was a resident of Michigan. *Tienda*, 300 Mich App at 607. The insurer issued the worker a policy in North Carolina, but had—as is the case here—filed the certificate required under MCL 500.3163(1). *Id.* at 609-610. Accordingly, if the worker was not an out-of-state resident at the time of the accident, the insurer could not be obligated to pay PIP benefits under MCL 500.3163. *Id.* at 613-614.

In considering the issue, the Court in *Tienda* assumed that the phrase "out-of-state resident," as used in MCL 500.3163(1), meant a person who is domiciled in a state other than Michigan. *Id.* at 613-615. The Court also did not consider whether the itinerant worker could have retained an earlier domicile in a different state, despite having vacated his residence in that state. Because the Court in *Tienda* operated on the assumption that the Legislature used the phrase "out-of-state" resident as synonymous with domiciled in a state other than Michigan for purposes of the no-fault act without analyzing the statute and our Supreme Court later reiterated in *Grange* that the Legislature's use of those terms might differ depending on the context, we shall briefly consider whether the phrase "out-of-state resident," as used in MCL 500.3163(1), properly means a person domiciled in a state other than Michigan.

The Legislature required insurers who are authorized to transact automobile liability insurance in this state to certify "that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance" will be "subject to the personal and property protection insurance system set forth in [the no-fault] act." MCL 500.3163(1). It is evident that the Legislature wanted to obligate insurers who are authorized to issue Michigan no-fault policies to pay no-fault benefits arising from accidents in this state even when the insurer issued the policy to an insured residing in another state. Under typical circumstances, a person would not purchase an automobile insurance policy from an insurer in a different state unless he or she had his or her domicile in the state where the policy was issued. Moreover, as already explained, our Legislature has exempted a nonresident from registering his or her motor vehicle in Michigan and from maintaining the security required under MCL 500.3101(1), unless the nonresident operates his or her vehicle in this state for an aggregate of more than 30 days in any calendar year. See MCL 257.216(a); MCL 257.243(1); MCL 500.3102(1). Although it is possible for a person to aggregate more than 30 days of travel in Michigan without ever residing in this state, it is unlikely. It is more likely that a person will reach the 30 day aggregate limit during periods of stays in Michigan; that is, this requirement appears to contemplate that a person can reside in Michigan for an aggregate of less than 30 days without becoming a resident of Michigan. Because these provisions each concern the rights and obligations of nonresidents under Michigan's vehicle code and no-fault act, and the no-fault act specifically refers to the registration requirements, the provisions should be read as a harmonious whole. See *Fradco, Inc v Dept of Treasury*, 495 Mich 104, 115; 845 NW2d 81 (2014). When read in this way, it appears that the Legislature used the terms "nonresident" and "out-of-state resident" in the Michigan vehicle code and no-fault act to mean a person who is not domiciled in the state of Michigan, as opposed to a person who is merely not residing in this state. Therefore, we must next determine whether Dahlmann was domiciled in Michigan at the time of her injury; if she was not domiciled in Michigan at the time, then she qualified as an "out-of-state resident" within the meaning of MCL 500.3163(1).

## 2. APPLYING THE LAW

The place of a person's domicile is normally a question of fact, but if the "material facts are not in dispute," the issue is one of law for the court. *Grange*, 494 Mich at 490. A person's domicile is not just the place where the person happens to reside at a given moment; it is that "place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* at 493 (quotation marks and

citation omitted). The legal meaning of domicile is, however, flexible and must be viewed "within the context of the numerous factual settings possible." *Workman*, 404 Mich at 496 (quotation marks and citation omitted).

In *Workman*, for purposes of determining whether persons were domiciled in the same household, our Supreme Court set out a variety of relevant factors:

(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; [and] (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household[.] [*Workman*, 404 Mich at 496-497 (citations omitted).]

"[N]o one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others." *Id.* at 496.

Michigan courts also consider the factors set forth in *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675, 682; 333 NW2d 322 (1983). See *Grange*, 494 Mich at 497-498 n 41 ("The *Workman-Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled."). In *Dairyland*, the Court considered the "particular problems posed by young people departing from the parents' home and establishing new domiciles as part of the normal transition to adulthood and independence." *Dairyland*, 123 Mich App at 681. The Court determined that five additional factors are relevant to determining when a young person has established a domicile apart from his or her parents:

Other relevant indicia of domicile include such factors as whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support. [*Id.* at 682.]

Every person has a domicile from birth; thereafter, a person may replace his or her current domicile by choosing another. *Grange*, 494 Mich at 501-502. However, "every person must have a domicile until a new domicile is determined" and "[t]ypically, . . . an adult acquires a new domicile by choosing one of his or her choice, which makes the question of intent a preeminent concern in determining an adult's domicile." *Id.* at 502.

In this case, it is undisputed that Dahlmann was domiciled in Virginia before she embarked on her journey across the United States; the only question is whether she chose to establish a new domicile in Michigan just before the accident at issue. Dahlmann's intent—as revealed by her actions and testimony—is therefore preeminent in determining whether she established a new domicile. *Id.* Dahlmann admitted at her deposition that she no longer had a

physical residence in Virginia. She vacated her apartment in Virginia, placed the majority of her personal property in storage, cancelled a utility, and left Virginia to travel across the country and visit with family. This testimony established that Dahlmann intended to change her domicile from her previous residence, but does not by itself establish that she had in fact changed her domicile to a particular location. There is further no evidence that Dahlmann intended to change her domicile, even on a temporary basis, to any of the locations she visited in Georgia or Washington. However, once she arrived in Lansing, Michigan, there is evidence that Dahlmann intended to adopt a new domicile, at least for an indefinite period, in Michigan.

The evidence showed that Dahlmann stayed with friends for a while, but then used her power of attorney to act on her husband's behalf and entered into a year-long lease for an apartment. Although she denied that she intended to permanently move to Michigan, Dahlmann agreed that she planned on staying in the apartment until her husband's deployment ended and he received his new assignment. She further indicated that the stay could be for weeks. Because Dahlmann no longer had a physical residence in Virginia when she entered into the lease in Lansing, her acquisition of a physical residence in Lansing along with the intent to stay there for the time being was sufficient to effect a change in domicile. See *Workman*, 404 Mich at 496 (stating that a person's subjective intent to reside in a particular place for an indefinite length of time is a factor). That Dahlmann anticipated changing her residence and domicile again in the near future did not alter the fact that she had changed her domicile to her new apartment for the interim period.

The undisputed facts demonstrated that Dahlmann had established her domicile in Lansing, Michigan just before her accident. As such, she was not an "out-of-state resident" and MCL 500.3163 did not apply. Consequently, the trial court erred when it applied MCL 500.3163 to require Geico to provide Dahlmann with Michigan no-fault benefits. The trial court should have granted Geico's motion for summary disposition.

D. MEND THE HOLD

On appeal, Dahlmann also argues that Geico should be estopped from relying on alternative bases for denying Dahlmann's request for benefits under the "mend the hold" doctrine. This Court reviews de novo whether the trial court properly applied Michigan's common law. *New Products Corp*, 308 Mich App at 644.

Our Supreme Court has stated that, under certain circumstances, an insurer should be estopped from asserting a defense to an action on the policy that the insurer did not earlier assert:

> This court has many times held, and it must be accepted as the settled law of this state, that, when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice. [*Smith v Grange Mut Fire Ins Co of Michigan*, 234 Mich 119, 122-123; 208 NW 145 (1926).]

There is some question as to whether and how this doctrine should be applied in modern practice. See, e.g., *Harbor Ins Co v Continental Bank Corp*, 922 F2d 357, 362-365 (CA 7, 1990) (discussing the origin, convoluted history, and application of the doctrine) Nevertheless, it appears that—under Michigan practice—this doctrine is equitable in nature and applies when it would be unfair to allow an insurer to assert an additional ground for denial after inducing the insured to rely on a different ground for denial to the insured's detriment. See *Reimold v Farmers Mut Ins Co*, 162 Mich 69, 73; 127 NW 17 (1910) (applying the doctrine where the plaintiff relied on the insurer's assertions in good faith and at his great expense; under the circumstances, the insurer had a duty to promptly repudiate the policy when "knowledge of these claimed breaches of the policy came to them"). Moreover, an insurer may assert a new ground for denial on the basis of newly discovered information, if asserted early enough to avoid prejudicing the insured; as our Supreme Court stated in the *Smith* case, "a different question would be presented" had the insurer asserted its new defense earlier in the proceedings. *Smith*, 234 Mich at 122.

Geico did not initially deny Dahlmann's application for benefits on the ground that Dahlmann was not an "out-of-state" resident under MCL 500.3163(1). Nevertheless, it had early on asserted that it had no obligation under Michigan law to provide Dahlmann with Michigan no-fault benefits and continued to assert that throughout the litigation. Geico also never conceded that this case involved a priority dispute between two insurers; rather, it was a coverage dispute between Geico and Dahlmann.

Even though it asserted a different statutory ground for the denial once it learned that she had not resided in Michigan for more than 30 days, Geico consistently stated that Dahlmann's decision to stay in Michigan for a period of time without complying with Michigan's no-fault act relieved it of any obligation to pay her benefits under Michigan law. Further, Geico asserted its position that Dahlmann was not an "out-of-state resident" early enough in the dispute to enable Dahlmann to take a responsive position. Geico's assertion of an alternate ground for denying Dahlmann's claim was not inequitable under these facts.

### III. CONCLUSION

Under the undisputed facts, Dahlmann had become domiciled in Michigan by the time she was injured and was not, as such, an "out-of-state resident" for purposes of MCL 500.3163. Because Dahlmann was not an "out-of-state resident", the trial court erred when it determined that Geico was obligated to pay Michigan no-fault benefits to Dahlmann under MCL 500.3163. The trial court should have granted Geico's motion for summary disposition and dismissed Dahlmann's claims against Geico. For these reasons, in Docket No. 324698, we reverse the trial court's decision, vacate its opinion and order granting summary disposition in Dahlmann's favor, and vacate its order compelling Geico to reimburse Frankenmuth and pay costs and interest. Given our resolution of this issue, we decline to consider the additional issues raised in Docket No. 324698 and the issues raised in Docket No. 325225. In Docket No. 325225, we vacate the trial court's order compelling Geico to pay Dahlmann's costs as a prevailing party. Finally, we remand this case to the trial court for entry of an order granting Geico's motion for summary disposition and for further proceedings consistent with this opinion.

Reversed, vacated, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Geico may tax its costs. MCR 7.219(A).

/s/ Jane M. Beckering
/s/ Michael J. Kelly