*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEEMIC INSURANCE COMPANY,

      Plaintiff-Appellant,

v

AUTO-OWNERS INSURANCE COMPANY,

      Defendant-Appellee.

UNPUBLISHED
April 21, 2026
10:20 AM

No. 374229
Wayne Circuit Court
LC No. 24-002865-AV

Before: GADOLA, C.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

At issue in this declaratory action is whether plaintiff, Meemic Insurance Company, or defendant, Auto-Owners Insurance Company, is first in the order of priority to pay personal protection insurance (PIP) benefits under § 3114 of the no-fault act, MCL 500.3101 *et seq*. The district court determined that Auto-Owners was first in priority, but the circuit court reversed that decision after concluding that Meemic was first in priority. Meemic appeals by leave granted the circuit court order.[1] We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

The facts are not disputed. On September 18, 2021, there was a collision involving a motor vehicle and a motorcycle. Katherine Jones was a passenger on the motorcycle, which was operated by Gunner Greaves. Jones and Greaves were covered by a no-fault policy issued by Auto-Owners.

The motor vehicle's driver was Kevin Withey. Withey's vehicle was covered by an automobile insurance policy issued by Meemic. The application for insurance was completed by Kelly Withey. The selection form presented six options for PIP coverage. Relevant to this appeal, Kelly Withey did not select what was designated as "Option 6," which provided for no PIP coverage, nor did she select "Option 1," which provided for unlimited PIP coverage. Instead, she

---

[1] *Meemic Ins Co v Auto-Owners Ins Co*, unpublished order of the Court of Appeals, entered May 29, 2025 (Docket No. 374229).

elected "Option 4" on a PIP selection form. That option was described as follows on the selection form:

Option 4: Limited Coverage of $250,000, with some or all persons excluded from **PIP allowable expenses**

This option is only available if you choose the $250,000 **PIP allowable expenses** limit.

- A **named insured** who wishes to exclude **PIP allowable expenses** must have **qualified health coverage** that is not Medicare.
- Any **resident relative** or spouse who wishes to exclude **PIP allowable expenses** must have **qualified health coverage**.

Anyone who is excluded will have no **PIP allowable expenses** coverage. Anyone who is not excluded will have $250,000 in **PIP allowable expenses** coverage.

Kelly Withey excluded several individuals, including herself and Kevin Withey from PIP coverage. Not surprisingly, neither Jones nor Greaves were excluded. The declarations page of the policy that was issued reflected in multiple places that there was $250,000 in coverage for allowable PIP expenses, but did not list a corresponding premium to be charged for the coverage. The declarations, however, referred to the PIP selection form as a place for the insured to locate "a summary of coverages."

Following the crash, Greaves and Jones submitted claims for benefits to Meemic, which initially stated to them that they were "afforded Full Medical benefits with a $250,000 limit with no deductible under [Withey's] No-Fault policy." Consistent with that statement, Meemic paid approximately $150,356.03 in PIP benefits to Greaves and Jones. Subsequently, Meemic sought reimbursement from Auto-Owners for the PIP benefits it had paid to Greaves and Jones. Auto-Owners refused, stating that because Meemic had made the payments as a "mere volunteer," Meemic was not entitled to reimbursement.

Meemic responded by filing a complaint in the circuit court, seeking a declaration that Auto-Owners was the highest in priority order under MCL 500.3114, and bringing claims for unjust enrichment and reimbursement. By stipulation, the case was removed to the district court. In the district court, Auto-Owners moved for summary disposition under MCR 2.116(C)(8) and (C)(10). In response, Meemic sought summary disposition under MCR 2.116(I)(2). The district court agreed with Meemic and granted its motion for summary disposition, reasoning that because Meemic's insureds had opted out of PIP coverage from themselves, Meemic was removed from the order of priority under MCL 500.3114(6). Auto-Owners applied for leave to appeal in the circuit court, and its application was granted. Thereafter, Meemic and Auto-Owners filed briefs on appeal in the circuit court. Following oral argument on the appeal, the circuit court held that Meemic was highest in order of priority. It later entered a written order reversing the district court's grant of summary disposition and remanding for entry of an order granting summary disposition to Auto-Owners.

## II. REVIEW OF CIRCUIT COURT APPEAL

### A. STANDARD OF REVIEW

Meemic argues that the circuit court erred by reversing the district court's grant of summary disposition in its favor. We review de novo a circuit court's review of a district court's

order. *Noll v Ritzer*, 317 Mich App 506, 510; 895 NW2d 192 (2016). "We review de novo questions of statutory interpretation." *Id*. Contract interpretation is also reviewed de novo. *Reicher v SET Enteerprises, Inc*, 283 Mich App 657, 664; 770 NW2d 902 (2009).

## B. ANALYSIS

### 1. MEND-THE-HOLD DOCTRINE

Meemic first argues that application of the "mend-the-hold doctrine" estops Auto-Owners from arguing that it is not first in priority because that was not the position that Auto-Owners initially took. We disagree.

The mend-the-hold doctrine provides that, "when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice." *Smith v Grange Mut Fire Ins Co of Mich*, 234 Mich 119, 122-123; 208 NW 145 (1926). The purpose of the mend-the-hold doctrine is "to prevent a party from changing positions after litigation has commenced[,]" and to "prevent an insurance company from misleading an insured about the reasons for denying coverage under the terms of a policy." *Childers v Progressive Marathon Ins Co*, 343 Mich App 257, 269; 997 NW2d 273 (2022) (quotation marks and citation omitted, emphasis added), aff'd in part and rev'd in part on other grounds 513 Mich 244 (2024). It is an equitable doctrine that applies when it would be unfair for the insurer to assert a ground for denial where it had induced the insured to rely on a different ground, to the insured's detriment. See *Reimold v Farmers Mut Ins Co*, 162 Mich 69, 73; 127 NW 17 (1910). Here, the dispute is between two insurers, not an insured and an insurer. Accordingly, the mend-the-hold doctrine is not applicable. And, even if it were, Meemic did not rely upon Auto-Owners' statements in the letter to its detriment. Meemic had already paid the claim and was seeking subrogation. Auto-Owners' refusal did not change Meemic's position. Under such circumstances, it is not unfair to allow Auto-Owners to contest whether it is the insurer responsible for the claim. Thus, there is no basis for estoppel.

### 2. PRIORITY UNDER MCL 500.3114

The parties agree that, as the insurer of the motor vehicle involved in the collision, Meemic is first in priority under MCL 500.3114(5). But they dispute whether Meemic is removed from the order of priority under MCL 500.3114(6). Both offer competing interpretations of the relevant statutory language. The proper interpretation of MCL 500.3114(6), however, was recently resolved in *Love v Allstate Property and Casualty Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369895), which was decided after briefing in the instant case was completed.

The dispositive facts in this case are identical to the facts in *Love*. Specifically, in *Love* there was a crash with several motor vehicles, including a motorcycle. *Id*. at ___; slip op at 2. Identical to Meemic's insured in this case, Auto Club's insured chose "Option 4" on the PIP selection form, which provided for $250,000 in limited coverage, with some or all persons excluded from PIP allowable expenses coverage. *Id*. at ___; slip op at 3. The insured in *Love*

specifically excluded herself from coverage. *Id*. Auto Club's insured, like Meemic's insured in this case, did not select "Option 6," which provided for no PIP coverage. *Id*. at ___; slip op at 4. Like Meemic in this case, Auto Club argued that, under MCL 500.3114(6), its insured's election of limited PIP benefits removed it from the order of priority in MCL 500.3114(5). *Id*. at ___ slip op at 7-8. That argument was rejected. *Id*. at 2.

*Love* holds that an insurer can be removed from the order of priority in MCL 500.3114(5) under two different scenarios. *Id*. at ___; slip op at 9, citing MCL 500.3114(6). Specifically, "[t]he plain language of MCL 500.3114(6) excludes from the order of priority any insurance policies that do not maintain PIP medical coverage under MCL 500.3107(1)(a) by operation of either the opt-out provision in MCL 500.3107d or the exclusions in MCL 500.3109a(2)." *Mary Free Bed Rehabilitation Hosp v Esurance Property and Casualty Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 370846); slip op at 13. The *Love* Court ultimately concluded that, because neither scenario in MCL 500.3114(6) applied, Auto Club was not removed from the order of priority. *Love*, ___ Mich App at ___; slip op at 15.

The first scenario arises if the insured elects not to maintain coverage under MCL 500.3107d. *Love*, ___ Mich App at ___; slip op at 9. After considering the relevant statutory language, *Love* concludes that it is "evident that under MCL 500.3107d(1), the named insured may decline PIP coverage for allowable expenses if the named insured is a 'qualified person,' meaning the named insured has health coverage under parts A and B of Medicare, *and* if household relatives also have the described required other coverage." *Id*. at ___; slip op at 11, citing MCL 500.3107d(1), (7)(b)(*ii*), (7)(c), and MCL 500.3107(1)(a). The Court concluded that Auto Club's insured did not elect Option 6, which mirrored the opt-out provision in MCL 500.3107d(1), and that she would not have been eligible to choose it given that there was no evidence that she had Medicare Parts A and B. *Id*. Identical to the factual circumstances in *Love*, in this case, Meemic's insured did not elect the opt-out provision in MCL 500.3107d(1), which mirrors Option 6 on the PIP selection form filled out in this case. Nor is there any indication that Meemic's insured was on Part A and B of Medicare, which means that she was ineligible for such an opt-out. Meemic, therefore, is not removed from the order of priority under the first scenario.

The second scenario arises if there is an exclusion from coverage under MCL 500.3109a(2).[2] *Love*, ___ Mich App at ___; slip op at 14. In interpreting what qualifies as an exclusion under MCL 500.3109a(2), the *Love* Court held:

---

[2] As explained even more recently in *Mary Free Bed Rehabilitation Hosp*, ___ Mich App at ___; slip op at 13 n 11:

> Although MCL 500.3114(6) refers to 'section 3109(2),' this is a typographical error. *Love*, ___ Mich App at __; slip op at 11. MCL 500.3109(2) merely defines "an injured person," which is irrelevant, while MCL 500.3109a(2) provides for exclusions from PIP medical coverage. As the Compiler's Notes to MCL 500.3114 states, "In subsections (4) and (6), the reference to 'section 3109(2)' evidently should read 'section 3109a(2).' "

MCL 500.3107c(1)(b) and MCL 500.3109a(2) expressly work in tandem and can be understood as providing both a limit on PIP coverage and a separate exclusion from any PIP coverage available only to certain designated individuals meeting certain conditions. The *limit* applies to anyone with a right to claim PIP benefits under the policy. MCL 500.3107c(5). However, any *exclusion* under MCL 500.3109a "must apply only to benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household." MCL 500.3109a(1). [*Id*. at ___; slip op at 15.]

Stated differently, the *Love* Court concluded that "the statutory scheme plainly does not provide the option, after choosing the coverage level of $250,000 in MCL 500.3107c(1)(b), to then choose to exclude anyone from being eligible for PIP benefits other than 'the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household.' " *Id*., quoting MCL 500.3109a(1). See also *Mary Free Bed Rehabilitation Hosp*, ___ Mich App at ___; slip op at 16 (stating that "under MCL 500.3109a(1), a policyholder can only exclude themselves, their spouse, or a relative in the household from coverage—they cannot exclude a third-party accident victim."). The *Love* Court recognized that the injured motorcyclist seeking benefits from Auto Club did "not fall within the category of individuals eligible for this exclusion." *Love*, ___ Mich App at ___; slip op at 15. Consequently, as to the motorcyclist's claim, Auto Club was not removed from the order of priority in MCL 500.3114(5) by operation of MCL 500.3114(6). *Id*. Likewise, in this case, neither Greaves nor Jones are eligible for exclusion under MCL 500.3109a(1). As a result, Meemic was not removed from the order of priority under the section scenario in MCL 500.3114(6).

In sum, because Meemic was not removed under either scenario stated in MCL 500.3114(6), it remains the highest insurer in order of priority under MCL 500.3114(5). This result is mandated by *Love*, which contained identical dispositive facts and the interpretation of the same statutory language at issue in this case.

### 3. CONTRACT INTERPRETATION

Meemic lastly argues that no PIP benefits are available under the policy it issued to its insured because the policy states that "PIP Allowable expenses coverage does not apply to any persons when Allowable Expenses Limit Benefits are Excluded." It notes that the policy states that no benefits are payable to a person occupying a motorcycle if there is an insurer higher in the order of priority. However, as noted above, Meemic is the highest insurer in the order of priority, so benefits are not contractually precluded on that basis.

Meemic also contends that the PIP selection form that its insured completed is not part of the policy. We disagree. Insurance contracts are interpreted using the same principles that apply to the interpretation of statutes. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). The goal is to determine the intent of the parties based upon the plain language of the contract. *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130-131; 743 NW2d 585 (2007). Unambiguous contracts must be enforced as written. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991). A contract is ambiguous if "a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same

circumstances." *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 566-67; 596 NW2d 915 (1999). Ambiguous contracts of insurance are construed against the drafter and in favor of coverage. *Id*.

Here, the first and third page of the declarations state that coverage includes $250,000 in allowable PIP expenses. Further, the fifth page of the declarations expressly states that the insured should refer to the PIP selection form "for a summary of coverages." As such, the PIP selection form is incorporated into the policy by reference. See *Whittlesey v Herbrand Co*, 217 Mich 625, 628; 187 NW 279 (1922) (stating that in "a written contract a reference to another writing, if the reference be such as to show that it is made for the purpose of making such writing a part of the contract, is to be taken as a part of it just as though its contents had been repeated in the contract.") (quotation marks and citation omitted). Option 4 on the PIP Selection form expressly states, "Anyone who is excluded will have no **PIP allowable expenses** coverage. Anyone who is not excluded will have $250,000 in **PIP allowable expenses** coverage." Meemic's insured selected Option 4, and the declarations page expressly refers the insured to the PIP selection form for the summary of coverage. As a result, the declarations plainly states that $250,000 in PIP allowable expenses is available to anyone who is not excluded. Greaves and Jones, as indicated above, are not excluded.

We note that there is a sentence on the first page of the declarations that states that there is only coverage where a "premium is shown." No premium is shown on the first page of the declarations for allowable PIP expenses and a premium of $0 is shown on the third page. At best, this sentence creates an ambiguity in the policy with regard to whether the policy actually provided the $250,000 in allowable PIP expenses for non-excluded individuals that Meemic's insured selected or whether, contrary to the election of Meemic's insured, it provided no PIP coverage. Any such ambiguity is resolved in favor of coverage. *Farm Bureau*, 460 Mich at 566-567. As a result, we conclude that the lack of a premium charged for the allowable PIP expenses does not preclude coverage in this case.

Affirmed. Auto-Owners may tax costs under MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly