# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES V. TODER,

　　　　　　Plaintiff-Appellant,

v

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

　　　　　　Defendant-Appellee.

UNPUBLISHED
August 3, 2017

No.　332786
Macomb Circuit Court
LC No.　2014-001817-NF

Before:　SHAPIRO, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Plaintiff has insurance policies for both his motorcycle and automobile.　He was injured in an accident with an uninsured automobile while riding his motorcycle and received his UIM limit under his motorcycle policy.　Is he also entitled to UIM coverage under his automobile insurance policy?　Pursuant to the contractual language in this case, the answer is clearly no. Accordingly, we affirm the circuit court's summary dismissal of plaintiff's bid for UIM coverage under the automobile insurance policy.

## I. BACKGROUND

James Toder was riding his motorcycle along Gratiot Avenue on May 8, 2013, when a Chevrolet Lumina pulled away from the curb and into oncoming traffic.　Unable to stop, Toder clipped the Lumina's "right rear panel."　Toder was injured and was taken by ambulance to St. John's Hospital.　He ultimately required "three major surgeries" as a result of his injuries.

Although the Lumina's driver provided proof of insurance at the accident site, it was later discovered that she was in fact uninsured.　Toder successfully sought his policy limit of $20,000 in uninsured/underinsured motorist (UIM) coverage under his Progressive motorcycle insurance policy.　Toder also owned a Ford van, which he covered with a Progressive auto insurance policy.　Toder filed a claim for UIM coverage under that policy as well.

Toder had secured $50,000 in UIM coverage under the auto policy.　The UIM "insuring agreement" within the auto policy provides:

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;

2. caused by an accident; and

3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**. [Emphasis in original.]

Coverage is excluded under the UIM provision under certain circumstances:

Coverage under this Part III will not apply:

1. to **bodily injury** sustained by any person while using or **occupying**:

* * *

b. a motor vehicle that is owned by or available for the regular use of **you** or a **relative**. This exclusion does not apply to a **covered auto** that is insured under this Part III[.] [Emphasis in original.]

Of import to this appeal, the Progressive policy defines "auto," in relevant part, as "a land motor vehicle . . . with at least four wheels[.]" A "covered auto," in turn, is defined to include any auto listed on the particular policy's declarations page as well as other "autos" that the insured owns temporarily.

Progressive did not deny Toder's claim for coverage under the auto policy, but did not provide the requested benefits either. As a result, Toder filed suit on May 2, 2014. Toder sought payment of the $50,000 UIM coverage under the auto policy. He also sought first-party no-fault benefits.

On October 1, 2014, counsel for Progressive wrote to Toder and his counsel, iterating:

Following our review of our client's discovery responses, you are of the impression that UIM benefits are available through both the motorcycle and automobile policies. We, respectfully, disagree.

Regarding the insuring agreement of the UIM coverage section, Progressive's counsel asserted:

The bolded sections . . . are inherently important because they signify that there are policy-based definitions. To this end, as addressed under the "Additional Definitions" section, an "Insured person" is found under subpart b as, "any person while operating a **covered auto** with the permission of **you** or **a relative**." The definition of a "covered auto" is found on page one (1) of the policy and, in relevant part, means "any **auto** or **trailer** shown on the **declarations page** for the

coverages applicable to that **auto** or **trailer**". Further, the definition of an "auto" is found on the same page to be defined as:

> 2. "**Auto**" means a land motor vehicle:
>
> * * *
>
> c. with at least four wheels . . . .
>
> * * *

Here, it is our understanding that this accident arose out of the use of a *motorcycle*. A motorcycle is not an automobile under the aforementioned policy which requires, among other things, for it to have at least four wheels. Nor is a motorcycle an automobile under the statutory definition provided by the Michigan No-Fault Act (see: MCL 500.3101), which reads as follows:

> (c) "Motorcycle" means a vehicle having a saddle or seat for the use of the rider, designed to travel on not more than 3 wheels in contact with the ground, which is equipped with a motor that exceeds 50 cubic centimeters piston displacement. The wheels on any attachment to the vehicle shall not be considered as wheels in contact with the ground. Motorcycle does not include a moped, as defined in . . . MCL 257.32b. Motorcycle does not include an ORV.
>
> * * *
>
> (e) "Motor vehicle" means a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. Motor vehicle does not include a motorcycle or a moped, as defined in . . . MCL 257.32b. . . .

My client's position is quite simple. The Underinsured Motorist (UIM) policy for the occupied motorcycle clearly applies (and has been tendered). The . . . UIM[] policy for the automobile cannot apply because an automobile was not occupied by the Plaintiff at the time of this accident and both the policy and the Michigan No-Fault Act do not allow for the Plaintiff's motorcycle to be interpreted as an automobile. [Emphasis in original.]

Essentially, Progressive contended that Toder was not an insured person under the auto policy because at the time of the accident he was not using a covered auto.

Progressive requested that Toder voluntarily dismiss his lawsuit. Toder declined to do so and the parties filed cross-motions for partial summary disposition pertaining to the UIM coverage under the auto policy.

In Progressive's summary disposition motion, the insurer changed gears from its October 2014 letter. Progressive continued to argue that a motorcycle is not a "covered auto" under the

policy because it does not have four wheels. Progressive now conceded, however, that a motorcycle is a "motor vehicle" under "the common sense and dictionary sense of the term." Progressive therefore contended that Toder was excluded from UIM coverage under the auto policy as he was "using or occupying a motor vehicle" owned by him, other than a covered auto.

Toder responded with his own motion for summary disposition and subsequently responded to defendant's motion on the same grounds. Toder noted that Progressive now "admits that there is coverage in the first instance" because Toder was an insured person injured in an accident with an uninsured vehicle. Progressive initially "denied the claim" on October 1, 2014, based on its determination that no coverage existed in the first instance and "abandoned that basis of denial" when seeking summary disposition. Toder described Progressive's reliance on the policy exclusion as a "new reason[]" to deny coverage. And that new reason "contradict[ed]" that originally stated. Specifically, Progressive initially posited that a motorcycle is not a "motor vehicle" and therefore UIM coverage under the auto policy was not applicable. Progressive could not "move the goal posts" and change its position following its denial of coverage, requiring its insured to jump through ever-shifting hurdles. This is the essence of the "mend the hold doctrine" in Michigan, Toder asserted. Under this doctrine, once an insurer denies liability on specific grounds, it waives any additional defenses to contract coverage.

Progressive retorted that the "mend the hold doctrine" applies only to fire loss and has not been applied to no-fault cases. Progressive further contended that in order for the doctrine to apply in any case, the insurer has to deny benefits before the litigation commences, which did not occur here. The October 1 letter was not a denial in Progressive's estimation, but rather an attempt "to open dialog with Plaintiff's Counsel before the manifestation of the pending dispositive motions."[1] Progressive further argued that the "mend the hold doctrine" could not be used to create coverage where none existed. The doctrine would allow insureds to preclude enforcement of insurance contract provisions based on "the insurer's acts or representations induc[ing] the insured to believe that coverage would be provided," i.e., estoppel. But, Progressive contended, Michigan law does not allow for the creation of contract rights on estoppel principles.

The circuit court heard the parties' arguments on March 30, 2015. Toder's counsel contended that Progressive denied his claim for UIM coverage under the auto policy in the October 1, 2014 letter, declaring "that plaintiff was not an insured person under the initial coverage language on the [UIM] policy." According to Toder, during her deposition, Progressive's adjuster "admitted . . . that that was a denial in writing" and that she later realized "that that position was wrong." Toder continued, "Michigan law has said for a very long time that when [an] insurer tells a policy holder the reason it's denying a claim, it has waived, intentionally waived any other defenses that it might have." When Progressive realized that its initial ground for denying coverage was incorrect, it could not then reformulate and raise a new

---

[1] Toder deposed Progressive PIP litigation adjuster Kristin Myszenski who repeatedly denied that Progressive had formally denied Toder's claim.

-4-

defense based on a policy exclusion. Toder denied that his claim was based on estoppel principles or that he was trying to expand coverage beyond the contract. Rather, he insisted he only sought the application of a longstanding legal principle of waiver.

Progressive reiterated that Toder possessed a motorcycle policy and had already received the UIM coverage limit under that policy. Progressive further clarified that this was not a no-fault case, but rather a contract case for UIM benefits that are not required under the no-fault act. Progressive continued to assert that its October 1 letter was not a coverage denial. Rather, discovery was ongoing at the time and the letter merely memorialized Progressive's position at that stage. Just because Progressive later concluded that Toder was an insured under the policy, did not mean that no exclusion could apply. Exclusion (1)(b) under the UIM coverage provision indicates that UIM coverage "will not apply to bodily injury sustained by any person while using or occupying a motor vehicle that is owned by or available for regular use by you or [a] relative. This exclusion does not apply to a covered auto insured under this part." The covered auto under the policy was a Ford van.

Progressive admitted that "motor vehicle" was not defined in the policy. The court interjected that the motorcycle was not a motor vehicle because it has only two wheels. Consistent with its October 1 letter, but not its position in the summary disposition debate, Progressive's counsel first agreed with the court's statement, but then reiterated that under dictionary definitions and common sense, "the motor cycle would be considered a motor vehicle and the exclusions would apply." Progressive then clarified for the court that although the motorcycle was a motor vehicle, it was "not a covered auto" because it had only two wheels.

The circuit court issued its opinion granting Progressive's motion for summary disposition on May 21, 2015. The court correctly characterized the question at issue: "whether a motorcyclist, who was involved in an accident with an uninsured motorist, is entitled to overlapping [UIM] coverage under his *automobile* policy when an exclusion with this policy does not permit these types of claims to proceed." (Emphasis in original.) The court determined that Toder's motorcycle was not an "auto" under the policy definition because it did not have four wheels. The definition of motorcycle in the no-fault act, MCL 500.3101(c), also excludes it as an auto. The court then cited MCL 500.3101(e), which specifically excludes a "motorcycle" from the definition of "motor vehicle." The October 1, 2014 letter, the court determined, was a denial of coverage but was a proper denial. The rationale cited in the letter "plainly corroborates not only [with] the policy provisions, but also the statutory provisions under Michigan's No-Fault Act." The court also rejected Toder's claim that the statutory language was ambiguous.

Toder sought reconsideration of the court's ruling, contending that although the court "concludes that the policy language is 'straight forward and direct,' . . . the Court's reasoning contradicts the Defendant's present interpretation of the contract, and mandates the opposite result." Specifically, Toder took issue with the court's determination that a motorcycle is not a motor vehicle under the contract. If that finding was accurate, Toder asserted, "no contractual exclusion applies" and Progressive's motion should have been denied.

Five months later, the circuit court finally resolved Toder's reconsideration motion. The court determined, "it did reach the correct result, albeit with the incorrect analysis." The court "agree[d] with plaintiff that defendant claims that plaintiff's motorcycle is a motor vehicle,

contrary to earlier assertions in correspondence that maintained that a motorcycle was not a motor vehicle. This created confusion as to what coverage was available to plaintiff." "But," the court insisted, it found "no ambiguity in the policy language." The court acknowledged that as this is a contract action, the contractual language controls. The policy does not define "motor vehicle," and the court referred to dictionary definitions, under which a motorcycle "is commonly considered a motor vehicle." Looking to the language of the subject policy exclusion, the court concluded:

> A clear distinction is made between "motor vehicle" (not emphasized) and "covered auto" (emphasized); use of such emphasis in the policy means the policy provides definitions for the term or word. Using the common definition of a motor vehicle, plaintiff's motorcycle is specifically excluded for [UIM] coverage under his automobile insurance policy. Hence, although the analysis is dissimilar to the Court's previous ruling, the result is the same.

Toder now appeals.[2]

## II. ANALYSIS

Toder contends that the UIM provision in the Progressive automobile insurance policy must be ambiguous as Progressive's agents and the circuit court first construed the contract to exclude a motorcycle from the definition of motor vehicle and then, upon further review, to include motorcycle as a motor vehicle. He also insists that Progressive was bound by the reasons cited in its October 1, 2014 "denial" letter and could not expand its contractual defenses thereafter.

"We review a trial court's decision on a motion for summary disposition de novo." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We must consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

Our Supreme Court long ago held that, under certain circumstances, an insurer should be estopped from asserting a defense to an insurance claim that the insurer did not assert earlier:

> This court has many times held, and it must be accepted as the settled law of this state, that, when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise

---

[2] We note that the circuit court initially ruled that its orders resolved all issues in the case and dismissed Toder's complaint in full. It later vacated its November 2015 order in part and reinstated Toder's first-party no-fault claim.

the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice. [*Smith v Grange Mut Fire Ins Co of Mich*, 234 Mich 119, 122-123; 208 NW 145 (1926).]

See also *Castner v Farmers' Mut Fire Ins Co*, 50 Mich 273; 15 NW 452 (1883). In practice, this is an equitable doctrine that courts should only apply when it would be unfair to allow an insurer to assert an additional ground for denial after inducing the insured to rely on a different denial ground to the insured's detriment. See *Reimold v Farmers Mut Ins Co*, 162 Mich 69, 73; 127 NW 17 (1910) (applying the doctrine where the plaintiff relied on the insurer's assertions in good faith and at his great expense; under the circumstances, the insurer had a duty to promptly repudiate the policy when "knowledge of these claimed breaches of the policy came to them"). And contrary to Progressive's protestations, the doctrine has been applied to all types of insurance policies and contracts, although not always referred to by name. See *Ruddock v Detroit Life Ins Co*, 209 Mich 638; 177 NW 242 (1920) (life insurance); *Reimold*, 162 Mich 69 (fire insurance); *Gividen v Bristol West Ins Co*, 305 Mich App 639; 854 NW2d 200 (2014) (no-fault policy); *Lee v Evergreen Regency Coop & Mgt Systems, Inc*, 151 Mich App 281; 390 NW2d 183 (1986) (professional liability insurance).

The doctrine precluding an insurer from changing its defense to insurance coverage is not unlimited. "[W]aiver and estoppel are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom." *Gividen*, 305 Mich App at 646-647 (quotation marks and citations omitted). " 'The theory underlying this rule seems to be that the company should not be required by waiver and estoppel to pay a loss for which it charged no premium. . . .'" *Lee*, 151 Mich App at 285, quoting 1 ALR3d 1139, 1144. Application of the doctrine has generally been limited to two classes of cases: "The first class involves companies which have rejected claims of coverage and declined to defend their insureds in the underlying litigation. In these instances, the Court has held that the insurance company cannot later raise issues that were or should have been raised in the underlying action." *Lee*, 151 Mich App at 286-287. The second

involves instances where the inequity of forcing the insurer to pay on a risk for which it never collected premiums is outweighed by the inequity suffered by the insured because of the insurance company's actions. The insurance company has either misrepresented the terms of the policy to the insured or defended the insured without reserving the right to deny coverage. [*Id*. at 287 (citations omitted).]

Here, Toder filed suit before Progressive actually denied coverage. During the course of litigation discovery, Progressive communicated its belief that coverage did not exist (hence its defense against Toder's lawsuit) pursuant to the UIM insuring agreement. Specifically, Toder had not "pa[id] the premium" for "coverage" for the specific accident because Toder was not an "insured person" as contemplated in the policy. An "insured person" must be operating a "covered auto." Toder's motorcycle was not a "covered auto" under the UIM policy because the policy defined an auto has having "at least four wheels." Although unnecessary to its resolution, Progressive also opined that the motorcycle was not an auto because it did not fit within the definition of "motor vehicle" in the no-fault act.

Toder did not rely on the defenses stated in this letter to its detriment. After all, Toder had already filed suit. Following two more months of discovery, Progressive amended its position regarding coverage, relying on the (1)(b) exclusion instead. Although Progressive continued to contend that Toder was not operating a "covered auto," the accident was excluded from coverage under the policy because Toder's bodily injury was sustained while occupying "a motor vehicle that is owned by or available for" Toder's regular use, other than the specific "auto" covered by the policy. Progressive abandoned its reliance on definitions in the no-fault act. As the policy differentiated between "auto" and "motor vehicle," they must mean different things. The insurer changed its position and declared that the motorcycle was a "motor vehicle" for purposes of the exclusion.

Moreover, estopping Progressive from raising the exclusion would force the insurer to cover an event for which it collected no premium. Progressive issued two policies to Toder, one for his van and one for his motorcycle. Toder had already collected UIM benefits under the motorcycle policy. Toder paid no premium for motorcycle coverage under his auto policy covering the van. The "mend the hold doctrine" or estoppel of insurance defense does not apply under the circumstances.

And contrary to the confusion of Progressive's adjuster and the circuit court, the language of Progressive's UIM policy is plain and clear, not ambiguous. "The primary goal in the construction or interpretation of a contract is to honor the intent of the parties. The language of the parties' contract is the best way to determine what the parties intended." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 714; 706 NW2d 426 (2005). "The contractual language is to be given its ordinary and plain meaning. An insurance contract must be construed so as to give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory." *Id*. at 715. A contract provision is ambiguous only if it "irreconcilably conflict[s]" with another contract provision, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003), or "is equally susceptible to more than a single meaning." *Barton-Spencer v Farm Bureau Life Ins Co*, 500 Mich 32, 40; 892 NW2d 794 (2017).

Exclusion (1)(b) provides that UIM coverage "will not apply . . . to bodily injury sustained by any person while using or occupying . . . a motor vehicle that is owned by or available for the regular use of" Toder other than "a covered auto." Toder owned the motorcycle and it was available for his regular use. He sustained bodily injury while using the motorcycle. The motorcycle was not "a covered auto" because the policy defined "covered auto[s]" as having at least four wheels. It also was not listed on the auto policy's declarations page.

The motorcycle was, however, a "motor vehicle" subject to exclusion. The policy does not define "motor vehicle." The definition must be more inclusive than "auto" as defined in the policy or the drafter would have simply reused "auto" in subsection (1)(b). See *Mason v Telefunken Semiconductors America, LLC*, 797 F3d 33, 42 (CA 1, 2015) ("Where the same word or phrase might have been used . . . in different portions of a [contract] but a different word or phrase having different meaning is used instead, the construction employing that different meaning is to be favored.") (quotation marks and citation omitted).

The Michigan Supreme Court has already found motorcycles to fall within the common-sense definition of "motor vehicle." In *Bianchi v Auto Club of Mich*, 437 Mich 65, 68; 467 NW2d 17 (1991), the Court interpreted an exclusion to UIM coverage for "bodily injury sustained by an insured person: while occupying a motor vehicle which is owned by you or a relative unless that motor vehicle" is the subject of the insurance policy. Unlike the policy in this case, the Auto Club policy defined "motor vehicle," although minimally. Specifically, a "motor vehicle" was defined as "a land motor vehicle or trailer, requiring vehicle registration." *Id*. The policy excluded various motorized vehicles from the definition, but did not mention motorcycles. *Id*. at 68-69. The Court determined that a motorcycle was a motor vehicle under the policy:

> The question thus becomes whether a motorcycle fits within the broad definition. Plainly, it does. A motorcycle is a motor vehicle in both the common sense and the dictionary sense of the term, it is operated on land, and it is required to be registered. MCL 257.216 . . . .
>
> * * *
>
> The broader definition of the term in the uninsured motorist section, on the other hand, is more akin to the use of the term in the Motor Vehicle Code, which includes motorcycles. MCL 257.33. . . . [*Id*. at 71.]

Webster's New World College Dictionary (5th ed), p 955, defines "motor vehicle" as "a vehicle on wheels, having its own motor and not running on rails or tracks, for use on streets or highways. . . ." A motorcycle is the type of vehicle contemplated in the dictionary; it is a motorized transport with wheels operated on roadways. It is also a "motor vehicle" for purposes of the subsection (1)(b) exclusion. Accordingly, we discern no error in the circuit court's grant of summary disposition in Progressive's favor.

We affirm.


/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien